UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RAMNARAIN JAIGOBIND,<br>MICHELLE JAIGOBIND,<br>QUIET SHORES, INC.,<br>    Plaintiffs, | :<br>:<br>:<br>: | CIVIL CASE NO.<br>3:22-CV-01099 |
| v. | :<br>: | |
| RONALD CARAPEZZI,<br>NEWELL CARAPEZZI,<br>CONNERS DEVELOPMENT, LLC,<br>MATT CONNERS,<br>DAVID PREUSCH ARCHITECT,<br>JALCO ENTERPRISES, LLC,<br>JOSEPH A. LATTARULO,<br>MARY GREEN, and<br>WILLIAM RAVEIS REAL ESTATE,<br>    Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | FEBRUARY 27, 2024 |

**RULING ON DEFENDANTS JALCO ENTERPRISES, LLC AND JOSEPH A. LATTARULO'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 112)**

**I.    INTRODUCTION**

Plaintiffs Ramnarain Jaigobind, Michelle Jaigobind, and Quiet Shores, LLC (hereinafter "plaintiffs") bring this action against defendants Ronald Carapezzi; Newell Carapezzi; Conners Development, LLC; Matt Conners; David Preusch Architect; Jalco Enterprises, LLC ("Jalco"); Joseph A. Lattarulo ("Lattarulo"); Mary Green; and William Raveis Real Estate, pursuant to this court's diversity jurisdiction. See Amended Complaint ("First Am. Compl.") (Doc. No 82). The plaintiffs allege various causes of action under Connecticut law against the respective defendants, asserting that the defendants engaged in misrepresentations and omissions regarding a defective property that plaintiffs purchased.

1

Two of the defendants, Jalco and Lattarulo (hereinafter "defendants") have moved for summary judgment on the ground that plaintiffs' lawsuit against them is time barred pursuant to a contract between the plaintiffs and these defendants. See Defendants Jalco and Lattarulo's Motion for Summary Judgment ("Defs.' Mot.") (Doc. No. 112). The plaintiffs oppose the Motion. See Plaintiffs' Memorandum of Law in Opposition to Motion for Summary Judgment ("Pls.' Opp.") (Doc. No. 119). For the reasons set forth below, the Motion is granted in part and denied in part.

## II.   BACKGROUND

### A.   Factual Background[1]

On June 11, 2021, plaintiffs Ramnarain and Michelle Jaigobind entered into a real estate sales agreement for a property in Westport, Connecticut. See Residential Real Estate Sales Agreement, Pls.' Ex. 1 (Doc. No. 118-1). On June 8, 2021, Michelle Jaigobind, in her capacity as the prospective owner of the property, signed a Home Inspection Order Agreement (hereinafter "the Agreement") with Jalco. See Plaintiffs' Local Rule 56(a)2 Statement of Facts ("Pls.' LR 56(a)2 Stmt.") ¶ 9 (Doc. No. 118); Defendants' Local Rule 56(a)1 Statement of Facts ("Defs.' LR 56(a)1 Stmt.") ¶ 9 (Doc. No. 113); Home Inspection Order Agreement, Defs.' Ex. 2, at 2 (Doc. No 114). The Agreement was also signed by Lattarulo, see id., who is "the owner and sole member of Jalco Enterprises, LLC", see Affidavit of Joseph A. Lattarulo ("Lattarulo Aff."), Defs.' Ex. 3, at ¶ 1 (Doc. No. 114).

Paragraph 4 of the Agreement provides, in part:

---

[1] The court draws from the parties' Local Rule 56(a) Statements and the parties' Exhibits in summarizing the material facts. The court also notes where the facts are disputed.

> Because conditions are constantly changing and an Inspection is a temporal assessment of the Dwelling's condition as of the time/day of the Inspection, no claim or legal action, including any based in tort or contract or otherwise, may be commenced against the Company after one year from the date of the Inspection. Failure to bring such an action within this time period shall be a complete bar to any such action and a full and complete waiver of any rights, or claims based thereon. This time limitation period may be shorter than provided by state/provincial law.

Home Inspection Order Agreement at 3-4; accord Pls.' LR 56(a)2 Stmt. ¶ 12;[2] Defs.' LR 56(a)1 Stmt. ¶ 12. On June 14, 2021, Lattarulo performed an inspection of the home. See Lattarulo Aff. ¶ 5; Affidavit of Michelle Jaigobind ("Jaigobind Aff."), Pls.' Ex. 2, at ¶ 4 (Doc. No. 118-2). According to testimony from Michelle Jaigobind, Lattarulo informed the Jaigobinds, after inspecting the home, that "all looks good" and "there is nothing glaring." See Jaigobind Aff. ¶ 4; accord Inspection Report, Pls.' Ex. 3 (Doc. No. 118-3). On June 29, 2021, the Jaigobinds completed purchase of the home. See Jaigobind Aff. ¶ 5.

According to testimony from Michelle Jaigobind, in early July 2021, she and her husband notified the defendants of interior leaks and other issues that they had identified in the home. Id. at ¶ 7.[3] On or about July 12, Lattarulo reinspected the property. Id. at ¶ 8; Lattarulo Aff. ¶ 7.[4] According to Michelle Jaigobind, Lattarulo again

---

[2] The plaintiffs deny the defendants' statement of fact that the Agreement contained these terms on the grounds that the "terms and conditions of the contract . . . are not enforceable, nor are they clear and unambiguous." See Pls.' LR 56(a)2 Stmt. ¶ 12. However, the defendants' Statement merely restates the text of the relevant provision of the Agreement; it does not discuss the provision's enforceability or clarity. See Defs.' LR 56(a)1 Stmt. ¶ 12. The plaintiffs do not deny the Agreement's authenticity. Accordingly, this material fact is deemed admitted. See D. Conn. L. Civ. R. 56(a)(2)(i)-(3).

[3] In his own Affidavit, Lattarulo attests that Michelle Jaigobind contacted him because "she could not get the ventilation unit in the master bathroom to work" and because she wanted him "to look at the ceiling in the kitchen of the property, as the paint was rippling." See Lattarulo Aff. ¶¶ 6-7. His Affidavit does not mention interior leaks. See id.

[4] The plaintiffs and defendants appear to offer different accounts of the scope of Lattarulo's reinspection. Michelle Jaigobind attests that the reinspection focused on a wide range of issues that she

told her that there were no serious issues with the home, and he "advised [the Jaigobinds] that the interior leaks were the result of the gutter system's . . . inability to handle that amount of water . . . ." Jaigobind Aff. ¶ 10. Lattarulo attests that "[n]o one on behalf of Jalco Enterprises, LLC visited the aforementioned property after July 12, 2021." Lattarulo Aff. ¶ 8.

The Jaigobinds attest that, because of Lattarulo's explanation that the leaks were due to issues with the gutter system, they spent the next few months believing that they merely "had a gutter problem." Jaigobind Aff. ¶ 15. However, after the winter months had passed and the Jaigobinds' contractors were able to conduct an extensive examination of the roof, they found "severe damage to, and rotting of the structure beams of the [h]ome due to severe water infiltration." Id. As a result, the Jaigobinds "began to suspect that, rather than a gutter problem as Jalco had claimed, the [h]ome suffered from [various] systemic issues . . . [n]one of [which] were identified in Joseph Lattarulo's Inspection Report" or in his reinspection. Id. at ¶¶ 16-17. From March 2022 to June 2022, the Jaigobinds worked with their homeowner's insurance company to determine the nature and extent of the damage, and they also hired an engineer "who came out to the [p]roperty on April 4, 2022 and June 21, 2022" to perform an inspection and issue a report, which appears to have been completed on June 21, 2022. Id. at ¶ 18; accord Engineer's Report, Pls.' Ex. 4 (Doc. No. 118-4). The Report identified numerous structural deficiencies with the home. See Engineer's Report at 3.

On August 30, 2022, the plaintiffs filed suit against all defendants, including Jalco and Lattarulo, in this court. See Complaint (Doc. No. 1). Plaintiffs' counsel first

---

brought to Lattarulo's attention, see Jaigobind Aff. ¶¶ 8-9, whereas Lattarulo appears to attest that the purpose of the reinspection was merely to reexamine the kitchen ceiling, see Lattarulo Aff. ¶ 7.

4

informed the defendants of the Complaint against them via a letter dated September 14, 2022.  See Pls.' LR 56(a)2 Stmt. ¶ 2; Defs.' LR 56(a)1 Stmt. ¶ 2.

B.  Procedural Background

The plaintiffs filed their original Complaint against the defendants on August 30, 2022.  See Complaint.  On February 21, 2023, the plaintiffs moved to amend their Complaint, see Motion to Amend (Doc. No. 58), which this court granted on March 23, 2023, see Order (Doc. No. 79).[5]  The Complaint alleges breach of contract, negligence, and the Connecticut Unfair Trade Practices Act ("CUTPA") against the defendants.  See First Am. Compl. ¶¶ 139-61.  That same day, the defendants filed their Answer and Special Defenses to plaintiffs' First Amended Complaint.  See Answer (Doc. No. 81).  On June 30, 2023, the defendants moved for summary judgment, see Defs.' Mot., which the plaintiffs oppose, see Pls.' Opp.

On January 8, 2024, the court ordered supplemental briefing on the issue of whether the one-year limitation applies to both Jalco and Lattarulo or solely to Jalco.  See Order for Supplemental Briefing (Doc. No. 217).  Jalco and Lattarulo filed their supplemental brief on January 18, 2024, see Jalco and Lattarulo's Supplemental Brief in Support of Motion for Summary Judgment ("Defs.' Suppl.") (Doc. No. 220), and the plaintiffs filed their response on January 25, 2024, see Plaintiffs' Supplemental Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 225).

---

[5] The plaintiffs have since filed a second and third Motion to Amend, both of which are currently pending before the court.  See Second Motion to Amend (Doc. No. 186); Third Motion to Amend (Doc. No. 228).

5

**III.     LEGAL STANDARD**

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016). If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

**IV.     DISCUSSION**

The defendants have moved for summary judgment on the ground that plaintiffs agreed to a contractual provision providing that "no claim or legal action, including any based in tort or contract or otherwise, may be commenced against the Company after one year from the date of the Inspection." See Defendants' Memorandum of Law in Support of Motion for Summary Judgment at 2-3 (Doc. No. 112) (quoting Home

Inspection Agreement at 3-4). The defendants assert that plaintiffs' claims against them are time barred because plaintiffs commenced the instant action in August 2022, over one year after the date of the Inspection. See id. at 5-6. The plaintiffs, in turn, contend that (1) the contractual provision is unreasonable and therefore unenforceable, and (2) the doctrine of equitable estoppel should bar the defendants from relying on the contractual provision. See Pls.' Opp. at 4-8.

      A.      Applicability of the Contractual Time Limitation

Before addressing the legal permissibility of the contractual time limitation at issue, the court must analyze the meaning and scope of the relevant language. The contractual provision at issue, Section 4 of the Agreement's "Additional Terms and Conditions", provides that "no claim or legal action, including any based in tort or contract or otherwise, may be commenced against the Company after one year from the date of the Inspection." Home Inspection Order Agreement at 3-4 (emphasis added). The Agreement defines "Company" as "Jalco Enterprises, LLC [doing business as] HouseMaster . . . a local independently owned and operated business". Id. at 1. Notably, Paragraph B of the Agreement, which is entitled "Company Liability" and enumerates certain limits on damages, provides that, "if the Company fails to conduct the Inspection as provided herein, the Company's liability (and that of its employees, assigns, agents etc.) for any and all claims . . . is limited to direct loss/damages to a maximum value of the fee paid . . . ." Id. The one-year suit provision, however, solely refers to "the Company" and does not explicitly extend the limitation to Jalco's members or "employees, assigns, agents[,] etc.", id. at 3-4, as Paragraph B does, see id. at 1.

7

As the Connecticut Supreme Court has held, courts may "not import terms into [an] agreement . . . that are not reflected in the contract." Gibson v. Capano, 241 Conn. 725, 732 (1997); accord Greenburg v. Greenburg, 26 Conn. App. 591, 598 (1992) (stating that "[a] court simply cannot disregard the words used by the parties or revise, add to, or create a new agreement" and that "[a] term not expressly included will not be read into a contract unless it arises by necessary implication from the provisions of the instrument" (internal quotation and citation omitted)).  Here, the text of the Agreement plainly states that suits may only be commenced against "the Company" within one year.  See Home Inspection Agreement at 3-4.  The Agreement defines "Company" to solely encompass Jalco.  See id. at 1.  And, contrary to a different section of the Agreement, the one-year suit limitation lacks any parenthetical extending the provision to Jalco's "employees, assigns, agents etc." See id. at 1, 3-4.  The defendants are correct that a contract must be read consistently and in its entirety.  Indeed, reading the Agreement in its entirety, and consistently across every provision, compels this court's conclusion that the language of the one-year time limitation unambiguously applies solely to Jalco.[6]  The Agreement could have provided a broader definition of "Company", or it could have included the same parenthetical from Paragraph B in the one-year limitation provision, but it did not do so.

The defendants also argue that the one-year limitation provision should apply to Jalco and Lattarulo equally because a reading to the contrary would (1) be inconsistent

---

[6] Even assuming the court were to conclude that the language of the one-year contractual limitation is ambiguous, the court would be compelled, based on the record presented to it, to resolve that ambiguity against the drafter.  C & H Shoreline, LLC v. Rubino, 203 Conn. App. 351, 359 (2021) (resolving an ambiguity in contract language against the drafter, and thus in favor of the non-drafter, where there was no extrinsic evidence to elucidate the ambiguous language).

8

with the principle of limited liability for members of a limited liability company ("LLC") and (2) the plaintiffs' claims against Lattarulo are based on an agency relationship and cannot be brought independently of that relationship. See Defs.' Suppl. at 3-5. Neither argument, however, warrants a different conclusion from this court. An LLC and its members are distinct legal entities. See Wasko v. Farley, 108 Conn. App. 156, 170 (2008). Moreover, where "an agent or officer [of a company] commits or participates in the commission of a tort, whether or not he acts on behalf of his principal or corporation, he is liable to third persons injured thereby." Scribner v. O'Brien, Inc., 169 Conn. 389, 404 (1975); Joseph Gen. Contracting, Inc. v. Couto, 317 Conn. 565, 583 (2015) (holding that an agent or officer of a company may be personally liable under CUTPA). Thus, the rules of limited liability do not compel this court to read the one-year limitation provision as applying to both Jalco and Lattarulo. Nor do the allegations in the Complaint. Although the defendants are correct that the Complaint alleges the same causes of action against both defendants, it also contains some separate factual allegations against Lattarulo. See First Am. Compl. ¶¶ 39, 52, 142-43. More importantly, as noted above, an agent of a company may be held personally liable for commission of a tort even if he "acts on behalf of his principal or corporation". Scribner, 169 Conn. at 404. Thus, the court cannot conclude that plaintiffs' allegations and claims against Lattarulo are encompassed by, and therefore barred by, the one-year limitation provision.

The court concludes that the language of the one-year limitation unambiguously applies to Jalco, but not Lattarulo.[7]  The defendants' Motion for Summary Judgment with respect to Lattarulo is denied.  The court will now determine whether the provision, as applied to Jalco, is legally permissible and otherwise reasonable.

B.  Legality of Contractual Time Limitations

Neither party contests the general proposition that, under Connecticut law, parties may enter into contracts that limit the time in which a party may file suit in court.  Indeed, the Connecticut Supreme Court has long held that provisions within insurance policies requiring the claimant to bring suit within one year are valid and enforceable in Connecticut.  See Bocchino v. Nationwide Mut. Fire Ins. Co., 246 Conn. 378, 384-85 (1998); Monteiro v. Am. Home Assur. Co., 177 Conn. 281, 283 (1979).

It does not appear that there is any direct case law from the Connecticut Supreme Court addressing the legality of contractual time limitations outside the insurance context.  However, the Connecticut Appellate Court has noted, in at least one non-insurance case, that "reasonable contractual limitation periods have long been deemed valid under Connecticut law."  C & H Shoreline, LLC v. Rubino, 203 Conn. App. 351, 355 n.2 (2021).  Moreover, multiple federal district courts in Connecticut have held that contractual time limitations outside the realm of insurance are, indeed, valid and enforceable under Connecticut law.  See Air Brake Sys., Inc. v. TUV Rheinland of N. Am., Inc., 699 F. Supp. 2d 462, 472 (D. Conn. 2010) (finding that "the laws of

---

[7] The court emphasizes that, in reaching this conclusion, it is not rendering any decision as to the legal sufficiency of plaintiffs' claims, such as plaintiffs' breach of contract claim, against Lattarulo.  The court reaches its holding as to the applicability of the one-year time limitation without prejudice to Lattarulo raising any other arguments regarding the legal sufficiency, or lack thereof, of plaintiffs' claims against him.

Connecticut permit parties to make such provisions a valid and binding part of their contracts" regardless of whether the contract at issue is an insurance contract); see also ARMOUR Cap. Mgmt. LP v. SS&C Techs., Inc., No. 3:17-CV-00790, 2018 WL 1368908, at *3 (D. Conn. Mar. 16, 2018) ("Connecticut courts recognize the validity of contractual provisions that limit the time within which a party to the contract may bring suit.").

This court agrees with the Air Brake court that, in Monteiro and Bocchino, the Connecticut Supreme Court, although specifically addressing an insurance contract, clearly "endorse[d] the general proposition that [a contractual time limitation] amount[s] to 'a valid contractual obligation.'" Air Brake, 699 F. Supp. 2d at 472 (citing Monteiro, 177 Conn. at 283); accord Bocchino, 246 Conn. at 383 (explaining that a contractual time limitation is not a statute of limitations but rather "a part of the contract" such that "the rights of the parties flow from the contract, and must be governed by the rules of law applicable to contracts" (quoting Chichester v. N.H. Fire Ins. Co., 74 Conn. 510, 512-13 (1902))). Indeed, "the vast majority of states" have generally upheld contractual time limitations, see Air Brake, 699 F. Supp. 2d at 472, and the United States Supreme Court has also recognized their validity under federal law, see Heimeshoff v. Hartford Life & Acc. Ins. Co., 571 U.S. 99, 106-08 (2013) (citing Order of United Com. Travelers of Am. v. Wolfe, 331 U.S. 586, 608 (1947)).[8] Accordingly, the court concludes that,

---

[8] Specifically, the Court has held that parties may contractually agree to limitations periods and that such agreements may pertain "not only to the length of a limitations period but also to its commencement." Heimeshoff v. Hartford Life & Acc. Ins. Co., 571 U.S. 99, 106-08 (2013) (citing Order of United Com. Travelers of Am. v. Wolfe, 331 U.S. 586, 608 (1947)). The contractual time limitation may be "less than that prescribed in the general statute of limitations, provided that the shorter [contractual] period itself [is] a reasonable period" and so long as no "'controlling statute' prevents the limitations provision from taking effect." Id. at 107-09 (citing Wolfe, 331 U.S. at 608).

11

under Connecticut law, contractual time limitations are legally permissible, regardless of whether they arise in the insurance context.

  C.  <u>Reasonableness of the Contractual Time Limitation</u>

The plaintiffs do not dispute that they agreed to the contractual time limitation at issue. They contend, however, that the contractual limitation either (1) is plainly unreasonable or (2) there is a genuine issue of material fact as to whether the provision is reasonable under the specific circumstances of this case. <u>See</u> Pls.' Opp. at 5-6. Indeed, courts in Connecticut and elsewhere have held that contractual time limitations must be "reasonable" to be enforceable. <u>See, e.g.</u>, <u>C & H Shoreline</u>, 203 Conn. App. at 355 n.2; <u>Air Brake</u>, 699 F. Supp. 2d at 470; <u>Heimeshoff</u>, 571 U.S. at 105-06; <u>Exec. Plaza, LLC v. Peerless Ins. Co.</u>, 22 N.Y.3d 511, 519 (N.Y. 2014) (noting that a limitations period must be reasonable under the specific circumstances of each case).

Here, the contractual provision at issue provides that "no claim or legal action, including any based in tort or contract or otherwise, may be commenced against the Company after one year from the date of the Inspection." Home Inspection Order Agreement at 3-4. The crux of plaintiffs' argument appears to be that, in this case, the one-year time limitation was unreasonable because it did not give the plaintiffs ample time to investigate and identify defects to the property. <u>See</u> Pls.' Opp. at 5-6.

To date, there does not appear to be any appellate case law in Connecticut addressing a contractual time limitation of this sort. There is, however, conflicting case law on the issue outside of Connecticut. The California Court of Appeal has held that one-year contractual provisions limiting a homeowner's right to sue a home inspector, running from the date of the home inspection, are unenforceable under California law.

12

Moreno v. Sanchez, 106 Cal. App. 4th 1415, 1433-34 (Cal. Ct. App. 2003) (holding that, under California law, "for a provision in a home inspection contract shortening the statute of limitations to be enforceable, . . . accrual of a cause of action occurs not with the inspection, but when the homeowner discovers, or . . . should have discovered, the breach"). Other state appellate courts, including the Georgia and Tennessee appeals courts, have upheld these limitations as enforceable. See BPG Inspection LLC v. Omstead, 367 Ga. App. 128, 135-36 (Ga. Ct. App. 2023) (holding, in a wrongful death action against a home inspection company, that the one-year contractual limitation was enforceable under Georgia law); Desgro v. Park, No. E2012-00918-COA-R3-CV, 2013 WL 84899, at *5 (Tenn. Ct. App. 2013) (finding a similar one-year contractual limitation to be "reasonable").

Based on existing Connecticut law, it is this court's prediction that, were this matter to reach the Connecticut Supreme Court, the Court would hold that the one-year contractual limitation at issue here is not per se unreasonable.[9] Courts in Connecticut have frequently upheld one-year limitations as valid and enforceable. See, e.g., Bocchino, 246 Conn. at 384-85; Monteiro, 177 Conn. at 283; Browning v. Peerless Ins. Co., No. CV054008798S, 2007 WL 1247226, at *3-4 (Apr. 13, 2007) (finding plaintiff's suit against insurer for failing to provide it coverage for frozen water pipes was time barred by enforceable one-year contractual limitation); Riggs v. Standard Fire Ins. Co., No. CV054010671S, 2006 WL 416201, at *2-3 (Feb. 7, 2006) (granting summary judgment to defendant for plaintiff's failure to comply with enforceable one-year

---

[9] "In deciding matters of state law," a federal court seeks to "predict how the state's highest court would resolve" the unsettled issue of state law. Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC, 22 F.4th 103, 120 (2d Cir. 2021).

13

limitation in flood insurance contract); Air Brake, 699 F. Supp. 2d at 473 (finding that a six-month limitations period, outside the insurance context, is not per se unreasonable under Connecticut law); ARMOUR, 2018 WL 1368908, at *3-5 (enforcing one-year contractual limitations period running from the date a cause of action accrued).

The court notes that existing Connecticut case law generally deals with one-year contractual limitations that expressly run from the date a cause of action accrued, or limitations in which the triggering event is typically clear or obvious, e.g., the date of a "loss" or "damage" delineated in an insurance contract.[10]  Nonetheless, there does not appear to be any controlling Connecticut case law holding, or even suggesting, that a one-year contractual limitations can only be reasonable in those circumstances.  The court could not locate any Connecticut cases holding that a one-year limitation, in any context, was unreasonable as a matter of law and therefore unenforceable.[11]  Indeed, Connecticut courts have emphasized that "contracts voluntarily and fairly made should be held valid and enforced in the courts", see Eichler v. Healthy Mom, LLC, 204 Conn. App. 504, 510 (2021) (internal citation and brackets omitted), and, as discussed above, they have broadly upheld and enforced one-year suit limitations.  As such, although the court recognizes that a one-year window to sue after a home inspection undoubtedly imposes a tight timeline, the court cannot say that this window is so narrow that it

---

[10] The court notes, however, that the date of a "loss" or "damage", as delineated in a one-year limitation in an insurance contract, may not always be immediately clear or obvious to an insured.

[11] By contrast, there appears to be at least one Connecticut trial court case suggesting that a provision like the one in this case is enforceable under Connecticut law.  See Sherer v. Fine Point Inspection, No. CV040489592, 2004 WL 2039430, at *1-2 (Aug. 10, 2004) (noting that an arbitrator may have been substantively correct in determining that plaintiff-homeowners were time barred from suing a home inspector due to a contractual provision prohibiting suits against the inspector that are commenced "more than one year after the date of the subject inspection", while vacating the arbitrator's finding on procedural grounds).

denies plaintiffs adequate time to uncover their potential injury and pursue a judicial remedy.[12] As the Jaigobinds themselves attest, they began discovering problems with the home shortly after the inspection. Jaigobind Aff. ¶¶ 6-8. Thus, the court declines to hold that the one-year limitation in this case is, under Connecticut law, per se unreasonable.

In turn, the court also concludes that plaintiffs have not proffered evidence sufficient to raise a genuine issue of material fact as to whether the contractual provision was unreasonable under the circumstances of this case. The plaintiffs contend that the contractual provision was unreasonable under the circumstances because the home "is a large and high-end residence, and not a typical [h]ome in any respect."[13] See Pls.' Opp. at 6. The court respectfully disagrees with plaintiffs that the sprawling size of the property is sufficient to raise a triable issue of fact as to the limitation's reasonableness. As noted above, within one month of the inspection, the plaintiffs—by their own admission—began discovering issues with the home, see Jaigobind Aff. ¶¶ 6-8, suggesting that the defendants may have performed an inadequate inspection. Accordingly, the court finds that plaintiffs have not raised sufficient evidence to create a genuine issue of material fact as to whether the limitation is unreasonable.

---

[12] The plaintiffs also do not cite, nor can the court locate, any controlling Connecticut statute that would render the contractual provision invalid and unenforceable.

[13] The plaintiffs also cite "the situation created by Jalco's purported reinspection of the Home and its subsequent opinion that the Home had a gutter problem." Pls.' Opp. at 6. In the court's view, this factual issue relates not to whether the limitation itself was reasonable but, rather, whether the doctrine of equitable estoppel may apply. See Section IV.C, infra.

D. <u>Equitable Estoppel</u>

The plaintiffs contend that, even if the limitation is enforceable, there is a genuine issue of material fact as to whether the defendants should be equitably estopped from invoking it in the present action. The Connecticut Supreme Court has previously applied the doctrine of equitable estoppel to a contractual time limitation. See <u>Boyce v. Allstate Ins. Co.</u>, 236 Conn. 375, 383-84 (1996); <u>accord</u> <u>Glazer v. Dress Barn, Inc.</u>, 274 Conn. 33, 60 (2005) (noting that "[e]quitable estoppel is a doctrine that operates in many contexts"). Moreover, multiple trial courts, including this court, have held that equitable estoppel—unlike equitable tolling[14]—can be invoked against a defendant who relies on a contractual time limitation as a defense. See <u>VP Elec., Inc. v. Graphic Arts Mut Ins. Co.</u>, No. 3:12–CV–00453, 2013 WL 4737327, at *4-6 (D. Conn. Aug. 30, 2013); <u>accord</u> <u>Green v. Royal Indem. Co.</u>, No. CV030283499S, 2004 WL 1462919, at *6 (June 8, 2004) (applying the doctrine of equitable estoppel to a contractual time limitation); <u>ARMOUR</u>, 2018 WL 1368908, at *5 (same). Indeed, equitable estoppel is a "general equity principle" that "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time," and it is, therefore, "not limited to the statute of limitations context". <u>Cada v. Baxter Healthcare Corp.</u>, 920 F.2d 446, 450 (7th Cir. 1990). It is therefore well established that the doctrine of equitable estoppel can apply to contractual time limitations.

---

[14] Although there is significant overlap between equitable tolling and equitable estoppel, they are separate and distinct legal doctrines. "Unlike equitable tolling, which is invoked in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment, equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit." <u>Zeyer v. Bd. of Educ.</u>, 98 F. Supp. 3d 425, 435 (D. Conn. 2015) (quoting <u>Ellul v. Congregation of Christian Bros</u>., 774 F.3d 791, 802 (2d Cir. 2014)).

16

In Connecticut, equitable estoppel requires two essential elements. "First, the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and second, the other party must change its position in reliance on those facts, thereby incurring some injury." Celentano v. Oaks Condo. Ass'n, 265 Conn. 579, 614-15 (2003) (cleaned up). "The party asserting equitable estoppel bears the burden of establishing its elements." Vasily v. MONY Life Ins. Co. of Am., 104 F. Supp. 3d 207, 216 (D. Conn. 2015). Whether the two elements have been established is "an issue of fact." Id. Equitable estoppel is generally not available to a party who "ignores highly suspicious circumstances which should warn him of danger or loss." Id. at 217 (quoting Bealle v. Nyden's, Inc., 245 F. Supp. 86, 94 (D. Conn. 1965)).

Here, after viewing the evidence in the light most favorable to the plaintiffs and accepting all the factual assertions in the Jaigobind Affidavit as true, the court concludes that the plaintiffs have not raised a genuine issue of material fact as to whether equitable estoppel applies. Although a reasonable jury could find that Lattarulo's assertions that the house was suffering from a relatively fixable gutter issue—which, according to the Jaigobinds, he made after the reinspection—could have been "intended to induce" the Jaigobinds into taking a course of action that steered them away from promptly uncovering the home's more serious structural defects and filing suit, the facts do not demonstrate that the Jaigobinds' reliance on this statement caused their delayed lawsuit. By the Jaigobinds' own admission, they were aware, by February 2022, of "severe damage to, and rotting of the structural beams of the [h]ome due to severe water infiltration", Jaigobind Aff. ¶ 15, which caused them to suspect that "rather

17

than a gutter problem as Jalco had claimed, the [h]ome suffered from systemic issues . . . ." Id. at ¶ 16. From March 2022 to June 2022, the Jaigobinds worked with their insurer to "determine the nature, cause, and scope of the damage." Id. at ¶ 18.

The Jaigobinds' own testimony therefore makes clear that they were aware, months before the contractual time limitation was complete, that, contrary to Lattarulo's assertions, the home appeared to have structural defects far more serious than a simple gutter issue.[15] At no point do the plaintiffs suggest that the defendants misled them about the applicability of the contractual limitation period, and they do not explain why they could not have sought counsel and filed suit when the more serious defects were uncovered between February and early June 2022. See ARMOUR, 2018 WL 1368908, at *5 (finding equitable estoppel did not apply where the plaintiff "point[ed] to no facts suggesting that [defendant] did anything to mislead [plaintiff] about the applicability of the contractual limitations period" and where plaintiff "knew of the alleged breach and had the choice to sue . . . before the time limitation period ended"). Although it may be true that the plaintiffs were initially misled by defendants' statements, the facts—as attested by Michelle Jaigobind—do not show that the defendants' statements and plaintiffs' reliance on those statements prevented the plaintiffs from suing in time. As such, even construing the evidence in the light most favorable to the plaintiffs, the court concludes that the plaintiffs cannot meet the second element of equitable estoppel.

---

[15] The Jaigobinds testify that they did not receive the Engineer's Report until June 21, 2022, see Jaigobind Aff. ¶ 18, after the contractual time limitation was complete. However, the Jaigobinds do not explain, and the court cannot glean, why they could not have filed suit against the defendants before the Report was provided to them. As discussed above, based on their own testimony, they were aware that the home had serious structural defects, and that the defendants did not inform them of those defects, well before the Report was issued. See Section IV.C, supra.

Because equitable estoppel does not apply, and because the plaintiffs agreed to a valid and binding contractual limitation that renders untimely their suit against "the Company"—i.e., Jalco—the Motion for Summary Judgment is granted with respect to Jalco.

## V.     CONCLUSION

For the reasons stated above, the defendants' Motion for Summary Judgment (Doc. No. 112) is granted in part and denied in part.  The Motion is granted with respect to Jalco Enterprises, LLC and denied with respect to Joseph A. Lattarulo.  The Clerk is respectfully directed to terminate Jalco Enterprises, LLC as a party to this case.

**SO ORDERED.**

Dated at New Haven, Connecticut this 27th day of February 2024.


      /s/ Janet C. Hall     
Janet C. Hall
United States District Judge