UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RAMNARAIN JAIGOBIND, *et al.*, : | |
| : | |
| *Plaintiffs*, : | |
| : | |
| v. : | No. 3:22-cv-1099 (JCH) |
| : | |
| RONALD CARAPEZZI, *et al.*, : | |
| : | |
| *Defendants*. : | |

**RULING ON MOTION FOR LEAVE
TO FILE THIRD PARTY COMPLAINT**

In this action alleging the existence and concealment of construction defects in plaintiffs' house, defendant homebuilders Conners Development, LLC and Matt Conners (collectively, "Conners") have filed a Motion for Leave to File a Third Party Complaint pursuant to Rule 14(a) that alleges common-law indemnification against five subcontractors. ECF 279. As explained below, the Motion is DENIED because impleader would be inefficient and prejudicial at this juncture and Conners has not shown good cause for modifying scheduling order deadlines.

**A. Procedural history**

Plaintiff commenced this action in August 2022 alleging defects in the architect's design and in the builder's (Conners) construction of their house. Plaintiffs further allege that prior to their purchase the builder (Conners), prior owners, and real estate agent concealed the defects and plaintiffs' home inspector failed to discover them.[1] Against Conners specifically, the operative Third Amended Complaint alleges negligence in the construction "by and through their subcontractors, agents, servants and employees" (Count Six), fraud by intentional

---

[1] In their Third Amended Complaint filed in February 2024, plaintiffs also added a new defendant (an engineer who prepared construction drawings) but then voluntarily dismissed that claim in May 2024. *See* ECF 229, 281.

misrepresentations prior to plaintiffs' purchase (Count Seven), fraudulent nondisclosure of defects prior to plaintiffs' purchase (Count Eight), negligent misrepresentation (Count Nine), and violation of the Connecticut Unfair Trade Practices Act (Count Ten).  ECF 229.

Plaintiffs served process on Conners in November 2022 and returned service in December 2022.  ECF 29.  Conners appeared through counsel in December 2022 but Conners' counsel did not participate in the February 2023 Rule 26(f) conference.  ECF 36, 51.  As the schedule progressed, Conners did not move to join any additional parties by the March 23, 2023 deadline in the scheduling order, ECF 67, nor did Conners file an apportionment complaint against any other allegedly negligent and responsible parties by the April 1, 2023 statutory deadline. [2]  The parties engaged in discovery and, after consultation with the parties in February 2024, the Court extended the fact discovery deadline to June 15, 2024.  ECF 227.

In April 2024, sixteen months after the original appearance by Conners' counsel, substitute counsel was retained by Conners' insurance carrier, who had only recently agreed to provide a defense.  ECF 262, 263, 279-1 at 5.  At a status conference that month, new carrier-assigned counsel advised the Court that they were familiarizing themselves with the case and might seek leave to plead claims against third-party defendants.  ECF 277.  Conners then filed his Motion for Leave to File Third Party Complaint on May 13, 2024,  ECF 279, approximately one month before fact discovery was due to close.

**B.  Legal standard**

Rule 14 provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."

---

[2] In federal court, the summons return date triggers the 120-day limitations period to file apportionment complaint under Conn. Gen. Stat. § 52-102b.  *See Roegiers v. United States*, No. 3:21-cv-1034 (OAW), 2023 WL 6200389, at *4 (D. Conn. Sept. 22, 2023).

Fed. R. Civ. P. 14(a)(1).  The purpose of the rule is judicial economy: "to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment against him and a judgment in his favor against the third-party defendant."  *Dery v. Wyer*, 265 F.2d 804, 806-07 (2d Cir. 1959) (quoting 3 Moore's Federal Practice, P14.04).  If filed more than 14 days after the defendant's original answer, the decision to permit impleader rests in the court's discretion.  *See* Fed. R. Civ. P. 14(a)(1); *Oliner v. McBride's Indus., Inc.*, 106 F.R.D. 14, 20 (S.D.N.Y. 1985).  Courts in this circuit generally consider four factors: "(1) whether the movant deliberately delayed or was derelict in filing the motion; (2) whether impleading would delay or unduly complicate the trial; (3) whether impleading would prejudice the third-party defendant; and (4) whether the proposed third-party complaint states a claim upon which relief can be granted."  *Capitol Records, Inc. v. City Hall Records, Inc.*, No. 07-cv-6488 (LTS)(KNF), 2008 WL 2811481, at *2 (S.D.N.Y. July 18, 2008).

       Additionally, because Conners filed his motion after the March 23, 2023 deadline to amend pleadings or join defendants, *see* Scheduling Order, ECF 67, he must show good cause pursuant to Rule 16(b)(4).  Local Rule 16(b) provides: "The good cause standard requires a particularized showing that the schedule cannot reasonably be me, despite the diligence of the party seeking the modification, for reasons that were not reasonably foreseeable when the parties submitted their proposed case management plan."  D. Conn. L. Civ. R. 16(b); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("a finding of 'good cause' depends on the diligence of the moving party").  The Second Circuit has further instructed that "allowing modifications of scheduling orders only for good cause[ ] provides the district courts discretion

3

to ensure that limits on time to amend pleadings do not result in prejudice or hardship to either side." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243–44 (2d Cir. 2007). Given that these Rule 16(b) considerations – diligence and potential prejudice – overlap in part with the Rule 14(a) considerations, the Court will address them together.

### C. Discussion

Conners raises three arguments in support of impleader: (i) the third-party complaint would eliminate the need for a separate action; (ii) Conners was sufficiently diligent insofar as their insurer only recently agreed to provide a defense, prior to which they lacked the resources to pursue the third-party complaint; and (iii) the addition of indemnification claims against five third-party defendants will not materially delay this action or prejudice either existing or proposed parties. ECF 279-1. None of these arguments withstands scrutiny.

#### 1. Impleader would not promote efficiency

First, Conners has not persuasively shown that impleader will increase judicial economy or overall efficiency. Conners' proposed third-party complaint names five subcontractors and alleges in conclusory fashion that, to the extent Conners is found liable for negligence relating to construction defects, the subcontractors were in control of the situation to the exclusion of Conners and the defects were caused by the subcontractors' active negligence, as compared to Conners' passive negligence. ECF 279-2. But even assuming for the sake of argument that the subcontractors negligently contributed to plaintiffs' injury, none of that liability could be apportioned to them because Conners did not file an apportionment complaint. *See* Conn. Gen. Stat. §§ 52-102b, 52-572h. Furthermore, although it appears that plaintiffs served subpoenas on two of the subcontractors – SJS Carpentry and RCM Carpentry – during fact discovery, *see* ECF 175, 176, 210, Conners' brief does not suggest that prior discovery would cover the needs of the

4

proposed new claims. Consequently, it appears that there is no significant overlap of legal or factual issues between plaintiffs' original claims and Conners' indemnification claims, and permitting impleader at this juncture would essentially import a separate miniature action into this case requiring a new round of fact discovery, a potential new round of expert discovery, and significant separate evidence at trial.

Introducing such complication at this point in the case would not increase efficiency. In the main action, plaintiffs allege that numerous aspects of the construction were defective, including the roof, wall sheathing, siding, stucco, exterior balconies/staircase/terrace/glass barriers, plumbing, stonework, wiring, wall supports, and drainage pipe. It is unclear at this juncture whether a jury will find the existence of any particular defect, whether any such defect was caused by the negligence of Conners or some other defendant, or which aspects of the project are involved. Insofar as the jury may find that only some – or none – of the construction was defective, the verdict might moot claims alleged in the proposed third-party complaint. [3] For example, if the jury were to find that only the stucco work was defective, then the indemnification claims against the plumbing, siding, and carpentry subcontractors would not have to be litigated at all. Accordingly, it makes little sense for indemnification claims by Conners – which do not even accrue until such time as there is a liability and damages determination against Conners – to be litigated against five different subcontractors without knowing whether there was any defect resulting from negligent work in which the subcontractors were involved. [4] For all these reasons, adding third-party claims to this action at this juncture

---

[3] Jury interrogatories presumably could be utilized for this purpose.

[4] Pursuant to Conn. Gen. Stat. 52-598a, "an action for indemnification may be brought within three years from the date of determination of the action against the party which is seeking indemnification by either judgment or settlement."

would be no more efficient than litigating them in a separate state court action upon accrual of any such claim by Conners, and likely less efficient.

Furthermore, although plaintiffs have not challenged the sufficiency of the allegations in the proposed third-party complaint, there may be plausible grounds for a motion to dismiss based on failure to state a claim. The proposed third-party complaint merely recites the elements of common law indemnification[5] in conclusory fashion. ECF 229. Some of this can be attributed to the contingent nature of the indemnification claim: it would be difficult for Conners to allege subcontractor negligence while disputing plaintiffs' claim of construction defects. But although this might explain the lack of factual allegations of subcontractor error, it does not explain the lack of plausible allegations as to other elements, including that the subcontractors were in exclusive control of the situation to Conners' exclusion or that Conners had no reason to know or anticipate negligence by the subcontractors. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (complaint must allege "enough facts to state a claim to relief that is plausible on its face"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The potential of Rule 12(b)(6) motions directed to the proposed third-party complaint by the proposed defendant subcontractors, which would engender further and significant delay, is further grounds to question the efficiency of impleader after discovery has already closed.

---

[5] "To assert a claim for indemnification [ ], an out-of-pocket defendant must show that: (1) the party against whom the indemnification is sought was negligent; (2) that party's active negligence, rather than the defendant's own passive negligence, was the direct, immediate cause of the accident and the resulting injuries and death; (3) the other party was in control of the situation to the exclusion of the defendant seeking reimbursement; and (4) the defendant did not know of the other party's negligence, had no reason to anticipate it, and reasonably could rely on the other party not to be negligent." *Smith v. City of New Haven*, 258 Conn. 56, 66 (2001).

## 2. Impleader would prejudice other parties

Not only would permitting impleader likely decrease efficiency, but it also would prejudice all parties other than Conners – including plaintiffs, the other seven original defendants, and the five proposed third-party defendants – by "delaying or unduly complicating" the trial. *See Capitol Records*, 2008 WL 2811481, at *2 (describing Rule 14(a) impleader considerations including prejudice); *see also Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (to assess prejudice in comparable Rule 15 pleading amendment context, courts consider whether new claim would, *inter alia*, require opponent to "expend significant additional resources to conduct discovery and prepare for trial" and "significantly delay the resolution"). Existing parties who have already been litigating for a year and a half would suffer significant delay and expense necessitated by further fact and expert discovery. And many parties would have to pay counsel to stand by while issues not relevant to them were litigated at trial. For example, the proposed third-party defendants accused of negligent construction would have little or no interest in evidence concerning the quality of the architect's design, whether the prior owners and real estate agent concealed defects and failed to make required disclosures, and whether the home inspector missed defects that he should have found. ECF 279. In fact, only two of the five claims against Conners himself sound in negligence, and if Conners were found liable on the other claims – for intentional misrepresentation, fraudulent nondisclosure, and CUTPA violation – he could not pursue indemnification for those portions of the judgment. *See Kalra v. Adler Pollock & Sheehan, P.C.*, No. 3:20-cv-1393 (KAD), 2022 WL 788507, at *3 (D. Conn. Mar. 15, 2022) (surveying Connecticut law and dismissing claim where party sought common law indemnification for intentional wrongdoing); *cf. GHP Media, Inc. v. Hughes*, 226 Conn. App. 162, 174 (2024) (declining to address unbriefed issue of whether indemnification is

available for intentional torts). Under these circumstances, it appears that the proposed impleader would be unduly prejudicial both to the existing parties and the proposed third-party defendants. Conversely, there is no undue prejudice to Conners. To the extent that there is any determination of liability against Conners and an award of damages, Conners has three years from the date of such determination to bring any common law indemnifications claims against parties Conners believes are responsible. *See* Conn. Gen. Stat. § 52-598a. Accordingly, considerations of prejudice weigh in favor of denying Conners leave to file the third party complaint.

### 3. No showing of good cause

Nor, in any event, has Conners shown good cause for waiting to seek impleader until fourteen months after the expiration of the joinder deadline and just one month before the close of fact discovery. Conners has been represented by counsel since December 2022 and took no steps to assert an apportionment complaint or common law indemnification claims despite being represented and despite notice that plaintiff was asserting claims related to allegedly defective framing, siding, roofing, stucco and plumbing from the outset of this litigation. While Conners notes that his insurance carrier only recently agreed to provide a defense and argues that he previously "lacked the resources" to pursue the proposed third-party complaint, Conners has not provided any documentation to corroborate his conclusory assertion as to lack of financial means. Further, the Court takes judicial notice that Conners has extensively litigated two matters in the Connecticut Superior Court, *Conners Development LLC v. Stephan Rodgers*, CV-19-5042683-S and *SSR Properties LLC v. Conners Development LLC*, CV-19-5042781-S, which relate to the same construction project at issue in this federal litigation and in which he is represented by the same law firm which represented him for nearly sixteen months in this action.

At a minimum, this raises some questions about the asserted lack of financial resources. Moreover, while the Court appreciates that the coverage delay may have put Conners in a difficult position, the problem was "reasonably foreseeable when the parties submitted their proposed case management plan," *see* D. Conn. L. Civ. R. 16(b), yet his counsel did not alert the Court to the problem or propose any accommodations. In fact, Conners' counsel did not even participate in the Rule 26(f) conference.

Further, and most importantly, Conners has not provided any explanation of why it took the insurance carrier nearly sixteen months to make a coverage determination and to assign substitute counsel to the matter. As the Connecticut Supreme Court has observed, "[a]n insurer's duty to defend is triggered if at least one allegation of the complaint falls even possibly within the coverage" and, where there is uncertainty, the prudent course is for the carrier to defend under a reservation of rights. *Nash Street, LLC v. Main Street America Assurance Company*, 337 Conn. 1, 9-10, 22 (2020) (internal quotation marks and citation omitted). At a minimum, if Conners (or the carrier) believed at the outset that there were potential third parties against whom claims for apportionment or indemnification could be asserted and litigated in this action, the carrier could have provided a defense under a reservation of rights or at least advanced defense costs pending a coverage determination. Apparently, the carrier did neither and no explanation for this failure has been offered. In short, to the extent that the delay in coverage determination rendered Conners unable to assert third party claims within statutory and Court-imposed scheduling deadlines, that appears to be a problem of the insurer's own making and there is no good cause for the Court to now rescue them from the consequences of their chosen course of

action. [6] The lack of good cause for the untimely impleader motion is an independent ground for its denial, in addition to the inefficiency and prejudice concerns discussed above.

### D. Conclusion

For all these reasons, Conners' Motion for Leave to File a Third Party Complaint, ECF 279, is DENIED.

This is not a recommended ruling. A motion to implead is not dispositive and may be decided by a magistrate judge. *See*, *e.g.*, *Warboys v. Shi-III Briarcliff Reit, LLC*, No. 19-cv-2491 (VB)(PED), 2020 WL 13561279, at *1 n.2 (S.D.N.Y. Feb. 10, 2020) (collecting examples); *Krezmien v. Lowe's Companies, Inc.*, No. 19-CV-117W, 2019 WL 4543134, at *1 n.1 (W.D.N.Y. Sept. 19, 2019). As such, it is an order of the Court unless reversed or modified by the District Judge upon motion timely made. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2.

SO ORDERED, this 11th day of July, 2024, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
S. DAVE VATTI
United States Magistrate Judge

---

[6] As the Court has already observed, Conners (and its insurance carrier) have an avenue of relief available, namely a separate action for indemnification, which accrues after a determination against Conners by judgment or settlement.