**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RAMNARAIN JAIGOBIND, | : | |
| MICHELLE JAIGOBIND, | : | CIVIL CASE NO. |
| QUIET SHORES, INC., | : | 3:22-CV-01099-JCH |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| RONALD CARAPEZZI, | : | JUNE 12, 2025 |
| NEWELL CARAPEZZI, | : | |
| CONNERS DEVELOPMENT, LLC, | : | |
| MATT CONNERS, | : | |
| DAVID PREUSCH ARCHITECT, | : | |
| JOSEPH A. LATTARULO, | : | |
| MARY GREEN, and | : | |
| WILLIAM RAVEIS REAL ESTATE, | : | |
|     Defendants. | : | |

**RULING ON DEFENDANTS RONALD CARAPEZZI AND NEWELL CARAPEZZI'S
MOTION FOR SUMMARY JUDGMENT (DOC. NO. 330).**

## I. INTRODUCTION

Plaintiffs Ramnarain Jaigobind ("Mr. Jaigobind"), Michelle Jaigobind ("Mrs.

Jaigobind"), and Quiet Shores, LLC (together, "the plaintiffs") bring this action against

Ronald Carapezzi ("Mr. Carapezzi"), Newell Carapezzi ("Mrs. Carapezzi"), and other

defendants[1] pursuant to this court's diversity jurisdiction.  See Third Amended

Complaint ("Third Am. Compl.") (Doc. No. 229).  The plaintiffs' claims arise from an

---

[1] These other defendants are Conners Development LLC, the development firm that constructed the Property, Matt Conners, the sole member of the Conners Development LLC,  David Preusch Architect, the architectural firm that designed the Property, Joseph A. Lattarulo, a home inspector retained by the plaintiffs, Mary Green, the Carapezzis' real estate agent, and William Raveis Real Estate, the real estate brokerage firm that employed Ms. Green.  See Third Am. Compl. at ¶¶ 3-12.

The present Motion was flied by the Carapezzis only, and pertains only to the plaintiffs' claims against them.  Thus, in the present Ruling, the court discusses these other defendants only to the extent relevant to the present Motion.  For clarity, the court will refer to the Movants here as "the Carapezzis," and avoid referencing "the defendants" unless referring to all of them.

allegedly defective property that the Carapezzis sold to them in 2021.  See id.  The plaintiffs allege that the Carapezzis engaged in a series of fraudulent misrepresentations and omissions to conceal defects and induce them to purchase the property.  See id.

Before the court is the Carapezzis' Motion for Summary Judgment.  See Defendants Ronald Carapezzi and Newell Carapezzi's Motion for Summary Judgment ("Carapezzi Mot.") (Doc. No. 330).  The plaintiffs oppose the Motion.  See Plaintiffs' Memorandum of Law in Opposition to Defendants Ronald and Newell Carapezzi's Motion for Summary Judgment ("Pl.'s Opp.") (Doc. No. 340).  See also Defendant's Reply Memorandum of Law in Response to Opposition to Motion to Dismiss [sic]. ("Carapezzi Reply.") (Doc. No. 346).

For the reasons set forth below, the Carapezzis' Motion is granted in part and denied in part.

## II.  BACKGROUND[2]

The Carapezzis purchased the property at 10 Gray Lane ("the Property") in November of 2018.  See Plaintiff's Local Rule 56(a)2 Statement of Facts ("Pl.'s 56(a)2 Stmt.") ¶ 5 (Doc. No. 340-1); Defendants' Amended Local Rule 56(a)1 Statement of Facts ("Defs.' 56(a)1 Stmt.") ¶ 5 (Doc. No. 337); Def.'s Ex. D at 4.  The Property was newly constructed when the Carapezzis purchased it.  See Def.'s Ex. D at 1.  By September of 2020, however, less than two years after they purchased the Property, the Carapezzis decided to sell it.  See Pl.'s 56(a)2 Stmt. ¶ 10; Defs.' 56(a)1 Stmt. ¶ 10;

---

[2] The court draws primarily from the plaintiffs' and the Carapezzis' Local Rule 56(a) statements and exhibits in summarizing the material facts.  As it must, the court construes all disputed facts in the light most favorable to the plaintiffs, the non-moving party.  It also notes where the facts are disputed.

Def.'s Ex. D at 4.[3]  In September of 2020, the Carapezzis completed a Residential

Property Condition Report ("Disclosure Form") as required by Connecticut law, and

afterwards listed the Property for sale.  See Def.'s Ex. D;  Pl.'s 56(a)2 Stmt. ¶ 11, Defs.'

56(a)1 Stmt. ¶ 11.

On the Disclosure Form, the Carapezzis disclosed that the Property is in a "flood

hazard area."  See Def.'s Ex. D at 1.  However, they marked "No" or "N/A" for questions

about whether the Property has any "basement water seepage/dampness," any "[r]oof

leaks," any "patio/deck problems," any "[w]ater drainage problems," or any "floor, wall

and/or ceiling problems."  See id. at 4-7.

Mr. and Mrs. Jaigobind visited the Property on several occasions before they

purchased it.  See Pl.'s 56(a)2 Stmt. ¶¶ 12-20, Defs.' 56(a)1 Stmt. ¶¶ 12-20.  At one of

these visits, Mr. Jaigobind asked about the location of the flood zone the Carapezzis

had disclosed on the Disclosure Form.  See Pl.'s 56(a)2 Stmt. ¶ 15, Defs.' 56(a)1 Stmt.

¶ 15.  During these visits, Mr. Jaigobind also asked about whether the windows were

hurricane proof, and whether there had been any storm damage to the Property.  See

Pl.'s 56(a)2 Stmt. ¶¶ 17, 19, Defs.' 56(a)1 Stmt. ¶¶ 17, 19.[4]  According to the plaintiffs,

at these visits, the Carapezzis did not disclose anything about a history of water

_____

[3] The Carapezzi's Local Rule 56 statement lacks sufficient information to construct a timeline of the Carapezzi's sale of the Property based on undisputed facts.  For ease of understanding the context, the court attempts to construct such a timeline here based on the parties' exhibits and, where necessary, the plaintiffs' Rule 56 statement.

None of these dates within this timeline are "material facts" within the meaning of Fed. R. Civ. P. 56, but the court includes them here for ease of understanding.  Where it can, the court draws information from exhibits, but also draws dates from the statements of one party.  To the best of the court's knowledge, none of the dates listed are in dispute.

[4] The plaintiffs' Rule 56 statement is non-responsive to the Carapezzis' assertion that Mr. Jaigobind asked about storm damage.  See Pl.'s 56(a)2 Stmt. at ¶ 19.  Thus, the court deems the fact admitted.

intrusion or leaks, which had also not been disclosed on their Disclosure Form.  <u>See</u>
Pl.'s 56(a)2 Stmt. ¶ 16.  The Carapezzis also provided the Jaigobinds with a list of
"improvements" which were made to the house.  <u>See</u> Pl.'s Ex. 28.

Mr. Jaigobind signed a purchase agreement on June 11, 2021, agreeing to
purchase the Property for $10,000,000.  <u>See</u> Def.'s Ex. G at 1.  He also signed the
Disclosure Form.  <u>See</u> Def.'s Ex. D at 7.  The purchase agreement contained a
purchaser's rider in which the Carapezzis stated that they "ha[ve] no notice of any
pending or threatened proceedings . . . affecting the property," that "there ha[ve]
been .  .  .  no serious water problems . . .with the basement," and that "the roof has
been free of leaks during [the Carapezzis'] period of ownership."  <u>See</u> Pl.'s Ex. 57 at 2-
3.  The closing for the Property took place on June 30, 2021.  <u>See</u> Pl.'s 56(a)2 Stmt. ¶
43, Defs.' 56(a)1 Stmt. ¶ 43.  On or after closing,[5] Mr. Jaigobind deeded the property to
Quiet Shores, LLC.  <u>See</u> Pl.'s 56(a)2 Stmt. ¶ 41, Defs.' 56(a)1 Stmt. ¶ 41.  The sole
member of Quiet Shores, LLC is the Michelle Jaigobind Revocable Trust, and according
to the plaintiffs, Mrs. Jaigobind is the Trustee of that Trust.  <u>See</u> Pl.'s Ex. 195 at 4; Pl.'s
56(a)2 Stmt. ¶ 40.

According to the plaintiffs, after the Jaigobinds moved in, they discovered
persistent water intrusion issues throughout the Property.  <u>See</u> <u>generally</u>, Third Am.
Compl.  The plaintiffs allege that the Carapezzis spent the nearly two and a half years in
which they owned the property attempting, unsuccessfully, to repair leaks and water
damage in the rear balcony and roof of the Property.  <u>See</u> Pl.'s 56(a)2 Stmt. ¶ 8.  The

---

[5] The record is unclear whether Quiet Shores, LLC purchased the Property directly, or whether
the Property was subsequently deeded to Quiet Shores, LLC by the Jaigobinds.  There is no dispute that
Quiet Shores, LLC currently holds title to the property, and timing of its acquiring the Property is not
material to the present Motion.

plaintiffs allege that the history of water intrusion and damage was not disclosed to them, or deceptively subsumed in the list of "improvements" provided to them prior to closing.  The Jaigobinds allege that they have had to spend more than $3,000,000 on repairs to the Property, and that they would not have purchased the Property had this history of leaks been disclosed to them.  See Third Am. Compl. at ¶ 126.

The defendants dispute the condition of the Property at the time it was sold. Although Mr. Carapezzi admitted in his deposition that he had observed "seepage" in the basement and "water damage," and Mrs. Carapezzi admitted to seeing "moisture" downstairs, they claimed to have repaired those issues.  See Pl.'s 56(a)2 Stmt. ¶ 8, Defs.' 56(a)1 Stmt. ¶ 8.  However, the plaintiffs have come forward with emails from Mr. Carapezzi to the builder of the house, suggesting that he may have been aware of more severe issues.  In one email, which was sent five days before closing with the Jaigobinds, Mr. Carapezzi attempts to collect reimbursement from the builder of the Property for "constant leaks and related damage to the underlying ceiling wood and materials beneath these balcony floors stemming from your original construction."  See Pl.'s Ex. 37.

The parties also dispute whether the Carapezzis had foreknowledge of the issues that the Jaigobinds have allegedly experienced, with the Carapezzis claiming that many of the issues were addressed and thus did not need to be disclosed to the Jaigobinds.

The plaintiffs brought claims against the Carapezzis and other defendants on August 30, 2022.  See Complaint (Doc. No. 1).  Currently, the plaintiffs allege the following causes of action against the Carapezzis: intentional misrepresentation or

fraud, fraud by nondisclosure, negligent misrepresentation, and negligence per se. See Third Am. Compl. The Carapezzis filed their Motion for Summary Judgment on September 15, 2024. See Carapezzi Mot.; see Memorandum of Law in Support of Defendants', Ronald Carapezzi and Newell Carapezzi, Motion for Summary Judgment ("Carapezzi Mem."). The plaintiffs oppose the Motion. See Pl.'s Opp.

## III. LEGAL STANDARD

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016). If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

## IV. DISCUSSION

The plaintiffs allege four causes of action against the Carapezzis: a claim of fraud

(Count One), a claim of fraud by nondisclosure (Count Three), a claim of negligent misrepresentation (Count Four), and a claim of negligence per se (Count Five). [6]  See Am. Compl. at ¶¶ 93-126.  Each of these claims is brought by all three plaintiffs.  See id.

The Carapezzis' Motion can be understood in three parts.  The first part seeks summary judgment with respect to Mrs. Jaigobind's claims only, and argues that she was not a party to the property transaction and therefore cannot prevail on her claims. See Carapezzi Mem. at 6-8.  In the second part, the Carapezzis move for summary judgment on all of the plaintiffs' fraud claims.  See id. at 8-18.  Third, the Carapezzis move for summary judgment on the plaintiffs' negligence claims.  See id. at 18-21.[7]

A.    Mrs. Jaigobind's Claims

The Carapezzis argue that they are entitled to summary judgment on Mrs. Jaigobind's claims, because it was Mr. Jaigobind, not Mrs. Jaigobind, who primarily negotiated the purchase of the Property and signed the paperwork at closing.  See

---

[6] Count Two of the Third Amended Complaint is a claim against the Carapezzis under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et. seq. ("CUTPA").  See Am. Compl. at ¶¶ 99-107.  The plaintiffs filed this Complaint together with their Third Motion to Amend.  See Doc. Nos. 228-229.  However, the court only granted the Third Motion to Amend in part, and denied the plaintiffs' third Motion to Amend insofar as it sought to add a CUTPA claim against the Carapezzis.  See Order: Ruling on Plaintiffs' Motions to Amend and Defendants Mary Green & William Raveis Real Estate's Motion to Dismiss (Doc. No. 233) at 8-9.

In that Ruling, the court stated that the "[plaintiffs] may refile an Amended Complaint, in accordance with this Ruling".  See Ruling at 13.  However, it appears that the plaintiffs never did so.  Subsequently, the defendants filed Answers in response to the proposed Complaint (Doc. No. 229), rather than a refiled Amended Complaint, consistent with this court's Ruling on the Third Motion to Amend.  See Answers (Doc. Nos. 329, 292, 288, 272).

Due to the age of the case, the court will not ask the parties to refile pleadings. Because the Third Amended Complaint (Doc. No. 229) is otherwise consistent with the court's Ruling on the Third Motion to Amend, the court deems this Fourth Complaint the operative pleading and strikes Count Two.

[7] The Carapezzis' Motion has a final section that is directed at Count Three, a claim of fraudulent nondisclosure.  However, this section appears to the court to retread arguments that the Carapezzis made in Section 2 about the plaintiffs lacking evidence the Carapezzis knew about defects in the home. Thus, the court does not discuss this part as a separate section.

Carapezzi Mem. at 7. The Carapezzis claim that Mrs. Jaigobind therefore had "no role in the transaction" and, as a result, cannot maintain any claims based on misrepresentations from the Carapezzis, because she did not receive their representations or rely on them.[8] Id. In opposition, the plaintiffs assert that the Jaigobinds purchased the Property using marital funds, that is, money belonging to both spouses, and that the Jaigobinds decided to purchase the property jointly. See Pl.'s Opp. at 20-22. The court agrees with the plaintiffs and declines to enter summary judgment on this ground.

In the court's view, the plaintiffs' evidence creates a material issue of fact about whether Mrs. Jaigobind was involved in the transaction, rendering summary judgment inappropriate. In her deposition, Mrs. Jaigobind testified that the Property was purchased by "my husband and I," and that she and her husband both jointly reviewed and relied on certain documents in deciding to purchase the Property. See Pl.'s Ex. B at 54:4-5 (emphasis added); 56:17-25. Drawing inferences in favor of the plaintiffs, a reasonable jury could conclude that Mrs. Jaigobind and her husband jointly decided to purchase the Property, and did so using money that they both owned. Thus, the court cannot conclude here that Mrs. Jaigobind had "no role in the transaction." Further, the court cannot locate any basis in the record for the Carapezzis' unsupported assertion that Mrs. Jaigobind could not have received any misrepresentations from them. See Carapezzi Mem. at 8. For example, Mrs. Jaigobind testified that she reviewed the

---

[8] The section of the Carapezzis' Memorandum which asserts Mrs. Jaigobind had "no role in the transaction" contains no citations to record evidence. See Carapezzi Mem. at 7-8. On this basis alone, the court could deny summary judgment. See Fed. R. Civ. P. 56(c)(1) ("[a] party asserting that a fact cannot be . . . disputed must support the assertion by . . .citing to particular parts of materials in the record"). The court is left to comb through the record to look for a basis for this assertion.

Disclosure Form and called it an "important document" to her, and "one of the documents that we put together to make a decision on . . . purchasing the home." <u>See</u> Pl.'s Ex. B at 56:17-25. Therefore, a reasonable jury could find at a minimum that Mrs. Jaigobind received the alleged misrepresentations in the Disclosure Form and other purchase paperwork. In addition, if a reasonable jury found that the Jaigobinds jointly decided to purchase the Property, such a jury could also reasonably infer that they shared and discussed the various representations that were communicated to each of them individually. Thus, just because a representation may have been made verbally to Mr. Jaigobind does not mean that Mrs. Jaigobind could not have received that representation or relied on it. Accordingly, the court declines to grant summary judgment on Mrs. Jaigobind's claims.

In this section of their Memorandum, the Carapezzis also reference an argument they made in a prior Motion to Dismiss, which this court denied without prejudice to raising at a later stage. <u>See</u> Ruling (Doc. No. 348). In their previous Motion, the Carapezzis argued that, because Quiet Shores, LLC is the current record owner of the Property, the other plaintiffs (Mr. and Mrs. Jaigobind) lacked standing, because property damages typically belong to the property owner. However, the court again declines to reach the issue here and adheres to the reasoning of its Prior Ruling. It is not clear to the court, either from the face of the pleadings or from the present evidentiary record, that the plaintiffs' damages belong exclusively to the record owner of the Property. For example, the plaintiffs' operative complaint seeks compensatory damages for harm to personal property, as well as for the loss of use and enjoyment of the Property. <u>See</u> Third Am. Compl. ¶¶ 84, 249. At a stage where the court must draw inferences in favor

of the plaintiffs, the court simply cannot conclude that all of the plaintiffs' damages belong to Quiet Shores, LLC as current record owner.[9]   Thus, the court denies the Motion on this ground as well.

B.    The Plaintiffs' Fraud Claims

The Carapezzis argue that they are entitled to summary judgment on all of the plaintiffs' claims for intentional misrepresentation, discussed here as the plaintiffs' "fraud claims."  See Kramer v. Petisi, 285 Conn. 674, 684 (2008) ("at common law, fraudulent misrepresentation and intentional misrepresentation are the same tort").  As best as the court can parse them,[10] the Carapezzis appear to make five arguments as to why they are entitled to partial or complete summary judgment on these claims.

First, the Carapezzis argue that many of the representations made to the Jaigobinds are inactionable as opinions or advertising puffery.  See Carapezzi Mem. at 9.  Second, the Carapezzis argue that the plaintiffs cannot rely on any statements outside of the purchase agreement, or other documents incorporated therein, because the purchase agreement disclaims reliance on outside statements.  See id. at 10.  Third, the Carapezzis argue that there is no evidence that they had foreknowledge of the issues that now plague the home.  See id.  Fourth, the Carapezzis argue that there

---

[9] The court reaches this conclusion for the purposes of the present Ruling only.  At trial, the plaintiffs carry the burden of proving damages for each plaintiff on each of their claims.  As a result ,the plaintiffs must provide the jury with a basis to determine damages between Quiet Shores, LLC, Mr. Jaigobind, and Mrs. Jaigobind.

Given the plaintiffs' assertions that the Property was purchased using "marital funds," the court wonders whether proceeding to trial with three separate plaintiffs and asking the jury to determine damages for each is needlessly complicated.  The parties should be prepared to discuss this at the Pretrial Conference.

[10] This section of the Carapezzis' Memo, pages 8-18, is not a model of clarity. The court does its best to address every argument raised by the Carapezzis.

were no misrepresentations in their Disclosure Form, because it should be read as a present statement of problems with the Property, and there is no evidence of any problems that needed to be disclosed at the time of sale.  See id.  Fifth, they argue there is no evidence that the plaintiffs justifiably relied on their representations in the Disclosure Form.  See id.  The court addresses each of these arguments below.

        1.      Whether Representations Were Opinions or Puffery

First, the Carapezzis argue that statements claiming the house was "perfect" or "easy to live in" amount to statements of opinion or advertising puffery, and they are therefore not actionable as misrepresentations.  See Carapezzi Mem. at 10-12.  Under Connecticut law, a claim of fraud must generally be based on a representation that is "intended as one of fact as distinguished from one of opinion."  Anastasia v. Beautiful You Hair Designs, Inc., 61 Conn. App. 471, 478 (2001).  In addition, certain forms of "favorable comments by sellers with respect to their products" may be deemed mere "puffing" and thus not give rise to a claim of fraudulent misrepresentation.  Gold v. Univ. of Bridgeport Sch. of L., 19 Conn. App. 379, 384 (1989).

In the court's view, there is a colorable argument that a statement that the Property is "easy to live in," for example, could be an opinion statement or mere "puffing."  However, the court declines to grant summary judgment on this ground for two reasons.  First, this section of the Carapezzis' Memorandum offers only three examples of representations that they argue are opinion statements.  See Carapezzi Mem. at 10-12.  The Carapezzis do not attempt to argue that all of the representations on which the plaintiffs relied are opinions or puffery, and none of the plaintiffs' claims appear to depend entirely on this selected handful of quoted examples.  Thus, even if

this court decided to grant the Motion in part on this grounds, it could only do so partially with respect to particular statements, not on any of the plaintiffs' claims in their entirety, and with only a handful of examples offered by the Carapezzis, the court will not comb through the record statement by statement to determine which ones are actionable.

Second, the Carapezzis' Memorandum contains no citations to record evidence. The court is therefore left to contextualize the quoted language through guesswork. See Carapezzi Mem. at 10-12. For example, the Carapezzis quote, without citing, a marketing brochure that states "the house was beautiful, wonderful place to live, it was perfect." Id. at 10. Based on the Carapezzis' Local Rule 56 statement, this quote appears to come from Mrs. Jaigobind's deposition, not from a brochure. See Defs.' 56(a)1 Stmt. ¶ 56. After reviewing Mrs. Jaigobind's testimony in context, she appears to be paraphrasing the Property's marketing materials in a possibly exaggerated way, not quoting language from a brochure word for word. See Defs.' 56(a)1 Stmt. ¶ 56; Def.'s Ex. E at 2. The brochure itself, to the best of the court's knowledge, is not a part of the record, so the court is being asked to rule on the brochure's representation secondhand. To put it simply, the court cannot grant summary judgment based on a handful of quoted examples without clear citations to a better record.

Thus, the Carapezzis' Motion is denied on this ground, without prejudice to any defendants raising this argument at trial. [11]

  2.  Whether Representations Outside of the Agreement Are Actionable

In their Memorandum, the Carapezzis assert that, "as provided by the contract, all representations other than the Disclosure Form did not survive delivery of the deed."

---

[11] The court rejects this argument for the purposes of the present Motion only. The defendants are not barred from addressing this issue, for example, in their proposed jury instructions.

<u>See</u> Carapezzi Mem. at 6.  Relatedly, they claim that "the only representation which the plaintiffs may use for their causes of action are contained within the Disclosure Form." <u>See</u> <u>id.</u> at 9.  These conclusory statements are made without citations to legal authority or to the factual record.  However, it appears to the court that this argument refers to a clause in the purchase agreement, which states:

> "[N]either SELLER nor SELLER's agents have made any representations or warranties as to the Premises on which BUYER has relied other than as expressly set forth in this agreement."

<u>See</u> Def.'s Ex. G at ¶ 7.  Thus, the Carapezzis argue, the plaintiffs' fraud claims must fail, insofar as they rely on statements outside of the purchasing documents.

The problem with this argument is twofold.  First, the plaintiffs' fraud claims are not based only on statements outside of the Disclosure Form and other documents; the plaintiffs also allege that those documents contain fraudulent statements.  <u>See</u> Pl.'s Opp. at 29.  Second, and more fundamentally, the plaintiffs' claims are not based on a contract or a breach of warranty; they are tort claims for fraud.  It is black-letter law in Connecticut that "fraud cannot be contracted against."  <u>Martinez v. Zovich</u>, 87 Conn. App. 766, 778 (2005), quoting <u>Ford v. H. W. Dubicki Co.</u>, 105 Conn. 572  (Conn. 1927). Thus, the purchase agreement cannot contract around the allegedly fraudulent representations of the Carapezzis.  Indeed, it is part and parcel of many fraudulent inducement claims that a representation <u>outside</u> of a contract induced a party to enter into that contract.  <u>See</u> Restatement (Third) of Torts: Liab. for Econ. Harm § 9 (2020) (describing remedies for a "a contract procured by fraud").  Here, the plaintiffs allege that the Carapezzis made fraudulent representations, or nondisclosures, for the purpose of inducing them to enter into a contract purchasing the Property.  Thus, the court will

not limit the plaintiffs' fraud claims to representations made in the contracting

documents themselves, and the Motion is denied on these grounds.[12]

       3.     Whether the Plaintiffs' Have Evidence of the Carapezzis'
           Foreknowledge

The third argument that the Carapezzis make is that there is no evidence that

they had foreknowledge of the issues that now plague the home, and accordingly

cannot have made misstatements of fact to the Jaigobinds.  See Carapezzi Mem. at 9.

However, the plaintiffs have come forward with more than enough evidence to create a

material issue of fact about the Carapezzis' foreknowledge.  See Pl.'s Opp. at 13-17.

For example, the plaintiffs cite a home inspector's report given to the Carapezzis in

2018, prior to their purchase of the Property, which predicted "active leaks in the tiled-

over flat roof decks."  See Pl.'s Ex. 52 at 36.  The plaintiffs also cite a series of emails

between Mr. Carapezzi and the builder of the home, culminating with an email days

before closing in which Mr. Carapezzi attempts to collect additional money from the

builder because of "a series of constant leaks and related damage. . . stemming from

your original construction."  Pl.'s Ex. 37.  In addition, three months before listing the

Property for sale, the Carapezzis hired a construction company to demolish the patio,

rebuild the rear balconies, and patch 10 different areas on the roof for leaks.  See Pl.'s

Ex. 52 (photographs demonstrating the ten roof areas patched).  These are a few

examples of evidence the plaintiffs cite, which is sufficient to create a material issue of

---

[12] It is not clear to the court whether the Carapezzis also mean to reference the property-law doctrine of "merger by deed," whereby "the terms of the deed ... automatically replace and supersede the terms of the underlying contract, absent a reservation of collateral rights."  Biro v. Matz, 132 Conn. App. 272, 280, (2011).  However, were the court to consider that doctrine, the result is the same.  The doctrine of merger by deed also applies only to contract claims, not to claims of fraudulent inducement.  See Matyas v. Minck, 37 Conn. App. 321, 337 (1995)

fact about whether the Property had systemic moisture issues at the time of sale, and whether the Carapezzis knew about these issues and did not disclose them.  Thus, the Motion is denied on this ground.

        4.      Whether the Disclosure Form only Discusses Present Issues

Fourth, the Carapezzis argue that they are entitled to summary judgment because the Disclosure Form contains no misrepresentations.  <u>See</u> Carapezzi Mem. at 12-17.  The Disclosure Form is a standard form required by section 20-327b of the Connecticut General Statutes, which sellers must fill out "to the best of [their] knowledge."  Conn. Gen. Stat. § 20-327b.  The Carapezzis argue that the Disclosure Form should be interpreted as only requiring disclosures about the present condition of the Property, not any past defects which are no longer present.  For example, the disclosure form includes the question: "Roof leaks? If yes, explain:"  <u>See</u> Def.'s Ex. D at 5.  In the Carapezzis reading, this question asks only whether the roof currently leaks, not whether it has a history of leaks.  Because the form only applies to present conditions, the Carapezzis argue, and because they assert that they remedied leaks prior to selling the Property, the Carapezzis argue it was not a misrepresentation for them to answer the question "no."  <u>See id</u>.  The court is not persuaded.

The court has already concluded that there are material issues of fact regarding the condition of the Property when it was sold.  <u>See</u>, <u>supra</u>, at 14.  Thus, even if the court accepted the Carapezzis' interpretation of the disclosure form, summary judgment on this ground is inappropriate.  However, the court also rejects the argument that the Disclosure Form references only the present condition of the Property.  The Carapezzis cite no authority in support of this argument, and instead argue that the use of present-

tense text in the form, such as "roof leaks?," supports their interpretation.  Carapezzi Mem. at 15.

The court is aware of no authority directly confronting the question of whether the section 20-327b form refers only to the present condition of a property.  The closest case the court can find is Dockter v. Slowik, 91 Conn. App. 448 (2005).  In Dockter, the seller of property did not disclose issues with water pumps on his section 20-327b form.  The seller testified that he answered "no" because, at the time he filled out the form, he thought there were no issues and "he did not know that he should have included information concerning past problems."  Dockter, 91 Conn. App. at 450.  The Appellate Court of Connecticut nonetheless upheld a trial court decision rescinding the real estate contract because of undisclosed problems with the pumps.  Id.

The text of section 20–327b, as well as the Disclosure Form itself, offer few clues about whether the questions refer only to the present condition of the home.  Questions such as: "[r]oof leaks? If yes, explain[,]"  see Def.'s Ex. D at 5, do not provide clarity on how far into the past they refer.  However, a 2003 decision by the Appellate Court of Connecticut contains a helpful discussion of the legislative history of section 20–327b. See Giametti v. Inspections, Inc., 76 Conn. App. 352, 360 (2003).  The Appellate Court concluded that "the function of a [section] 20–327b report is to diminish the risk of litigation by facilitating meaningful communications between a vendor and a prospective purchaser."  Id.  In the court's view, a narrow reading of the form to only require disclosure of present problems would frustrate the legislative intent of section 20–327b, because it would allow a seller of property to conceal lengthy histories of defects from buyers by repairs undertaken immediately before putting the property on the market,

without knowing if the repairs were effective.  In the court's view, such a narrow reading of the form would not "facilitat[e] meaningful communication" between buyers and sellers in a way that would "diminish the risk of litigation" – and instead it would have the opposite effect.

Thus, the court rejects the Carapezzis' interpretation of the form as only requiring disclosure of present issues.  The Motion is denied on these grounds.

5.    Whether the Plaintiffs' Relied on the Representations

Finally, the Carapezzis argue that there is no evidence that the Jaigobinds actually relied on disclosures in the Disclosure Form.  See Carapezzi Mem. at 17.  The court rejects this argument because there is evidence that could persuade a reasonable jury to the contrary.  Mrs. Jaigobind testified that the Disclosure Form was an "important document" to her, and "one of the documents that we put together to make a decision on . . . purchasing the home."  See Def.'s Ex. B at 56:17-25.  In addition, during the Jaigobinds' visits to the Property, Mr. Jaigobind inquired about flood zones, inferably based on the fact that the issue was disclosed on the Disclosure Form.  See Def.'s Ex. D; Pl.'s 56(a)2 Stmt. ¶ 15; Defs.' 56(a)1 Stmt. ¶ 15.

On the basis of this evidence, a reasonable jury could find that the Jaigobinds reviewed, followed up on, and relied on the representations – or lack of disclosures – that the Carapezzis made in the Disclosure Form.  Because a reasonable jury could find that the Jaigobinds relied on the Disclosure Form, the court denies the Motion on this ground.

C.    The Plaintiffs' Negligence Claims

In addition to their claims of intentional misrepresentation, the plaintiffs also bring claims of negligent misrepresentation (Count Four) and negligence per se (Count Five) against the Carapezzis. See Third Am. Compl. ¶¶ 116-126. Count Four is nonspecific in alleging that the Carapezzis' "misrepresentations and omissions of material fact regarding the condition of the Property" were negligent. Third Am. Compl. ¶ 117. The Carapezzis negligence per se Count, however, pertains only to misrepresentations on the Disclosure Form. See Third Am. Compl. at ¶¶ 121-125.

1.    Negligent Misrepresentation (Count Four)

To prove a claim for negligent misrepresentation in Connecticut, a plaintiff must establish "(1) that the defendant made a misrepresentation of fact (2) [which] the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." Stuart v. Freiberg, 316 Conn. 809, 822 (2015). Thus, to prevail on their negligent misrepresentation claim, the plaintiffs must prove, inter alia, that they reasonably relied on the Carapezzis misrepresentations. In their Motion, the Carapezzis argue that the Disclosure Form cannot be used as the basis for the plaintiffs' negligence claims, because the form contains certain disclaimers that, as a matter of law, prevent the plaintiffs from reasonably relying on its contents. See Carapezzi Mem. at 18-21. The court is not persuaded.

The Carapezzis rely on the Appellate Court of Connecticut's decision in Giametti, 76 Conn. App. 352 (2003). In Giametti, a property owner sold a house with a carpenter ant infestation, which was unknown to her at the time. As a result, she failed to disclose

18

the infestation on her section 20–327b form, and the trial court had found the seller liable for negligent misrepresentation because of her unknowing misrepresentation. See Giametti, 76 Conn. App. at 358.  However, the Appellate Court of Connecticut reversed the judgment on the basis that there was no evidence the buyer had relied on the representations in the section 20–327b form, especially because the form explicitly advised the buyer to obtain an independent inspection of the property, which also failed to identify the infestation.  See id. at 365.  In the present case, the Disclosure Form has the same provisions at issue in Giametti: the form includes the caveat that it is based on the sellers' actual knowledge, and it urges the buyer to inspect the property "carefully" and "to have the property inspected by an expert."  See Def.'s Ex. D at 7.  Thus, the Carapezzis argue, as in Giametti, the plaintiffs did not reasonably rely on the Disclosure Form, and their negligence claims fail as a matter of law.

However, as the plaintiffs point out in their opposition, the Court in Giametti did not hold that disclaimer language in a section 20-327b form always negated reasonable reliance as a matter of law.  See Pl.'s Opp. at 35-37.  Instead, the Appellate Court analyzed whether the buyer had relied on certain representations in the section 20-327b form as a question of fact.  See Giametti, 76 Conn. App. at 363-366.  The Court did not hold that, as a matter of law, a plaintiff can never reasonably rely on the disclosures in the form.  Instead, the court found the evidence lacking that the plaintiff had, in fact, relied on the form, and treated the disclaimers in the form, as well as the fact that the plaintiff sought out an independent inspection, as evidence that the plaintiff had not so relied.  See id.

Following the court's approach in Giametti, the disclaimers in the present case

could serve as <u>evidence</u> that plaintiffs did not, in fact, rely on the Disclosure Form.  That is not dispositive, however, because there is other evidence in the record that could lead a reasonable jury to conclude that the Jaigobinds did rely on the form.  See Def.'s Ex. B at 56:17-25 (Mrs. Jaigobind testifying that the form was an "important document" and "one of the documents that we put together to make a decision on . . . purchasing the home"); see also Pl.'s 56(a)2 Stmt. ¶ 15; Defs.' 56(a)1 Stmt. ¶ 15 (Mr. Jaigobind inquired, during a visit to the Property, about issues the Carapezzis identified in the form).  Because of this evidence, a reasonable jury could find that the Jaigobinds did in fact rely on the representations in the Disclosure Form.  Accordingly, the court cannot conclude, either as a matter of law or undisputed fact, that representations on the Disclosure Form cannot be a basis for the plaintiffs' negligent misrepresentation claim.[13]

2.    Negligence Per Se (Count Five)

However, as it relates to the plaintiffs' negligence per se claim in Count Five, the court finds the Carapezzis' argument persuasive.  In Count Five, the plaintiffs allege that the Carapezzis' misrepresentations on their section 20–327b form amount to negligence per se, because they violate the disclosure requirements of section 20–327b.  See Third Am. Compl. at ¶¶ 121-126.  The plaintiffs' Third Amended Complaint alleges that section 20-327b imposes a "standard of care" and, in essence, that any misrepresentation on a section 20–327b form violates that standard of care and is negligent per se.

The Connecticut Supreme Court explains the theory of negligence per se as such:

"Negligence per se operates to engraft a particular legislative standard

---

[13] Regardless, the plaintiffs' negligent misrepresentation claim is not solely based on representations in the Disclosure Form, so the court would decline to enter summary judgment on Count Four on alternate grounds.

> onto the general standard of care imposed by traditional tort law
> principles, i.e., that standard of care to which an ordinarily prudent person
> would conform his conduct. To establish negligence, the jury in a
> negligence per se case need not decide whether the defendant acted as
> an ordinarily prudent person would have acted under the circumstances.
> They merely decide whether the relevant statute or regulation has been
> violated. If it has, the defendant was negligent as a matter of law."

Wendland v. Ridgefield Const. Servs., Inc., 184 Conn. 173, 178 (1981).  Thus, the

question for the court is whether, in enacting section 20–327b, the Connecticut

legislature was propounding a standard of care by which an ordinary person must

conform their conduct.  Put another way, in the context of a negligence claim for

misrepresentations in the sale of property, does section 20–327b define a seller's duty

of care, that is, what they "knew or should have known[?]"  Stuart, 316 Conn. at 822.

Given the Appellate Court's discussion of the legislative history of section 20-327b in

Giametti, which this court finds persuasive, the answer is no.

Although the Court in Giametti did not address a theory of negligence per se, the

Court concluded that section 20–327b "does not govern negligent misrepresentation

actions."  See Giametti, 76 Conn. App. at 361.  The Court summarized the legislative

history of the statute as follows:

> "In sum, the function of a [section] 20–327b report is to diminish the risk of
> litigation by facilitating meaningful communications between a vendor and
> a prospective purchaser. It does not, however, require a vendor to assume
> the role of warrantor of conditions of which the vendor was in fact
> unaware."

Id. at 360.  Accordingly, section 20–327b, and the accompanying standard form, only

require that a seller of property make disclosures "to the best of [their] knowledge."

Conn. Gen. Stat. § 20–327b.  Sections 20–327d and 20–327e, which were enacted

together with section 20–327b, further clarify that the representations on the form do not

create implied or express warranties, and repeat that disclosures "shall be construed only to extend to the seller's actual knowledge of the property." Conn. Gen. Stat. § 20–327e.

Thus, a section 20–327b form should be read only to inquire what a seller actually knows. It does not define what a seller <u>ought</u> to know for the purpose of liability in negligence. To hold otherwise, In the court's view, would defeat the legislative purpose of section 20–327b by, in effect, turning a vendor into a warrantor of conditions "of which the vendor was in fact unaware." <u>Giametti</u>, 76 Conn. App. at 360. Thus, the court concludes that an unknowing misrepresentation on the section 20–327b form is not negligent <u>per se</u>. To be clear, as in <u>Giametti</u>, this court does not hold that section 20–327b precludes negligent misrepresentation actions in the sale of real estate, or that representations on a 20–327b form cannot serve as the basis for a negligent misrepresentation claim. The court only concludes that a theory of negligence <u>per se</u> does not apply to misrepresentations on the form, because the form does not necessarily define what a seller "knew or should have known." <u>Stuart</u>, 316 Conn. at 822.

Accordingly, the court concludes that there is a genuine issue of material fact regarding the plaintiffs' negligent misrepresentation claims, so the Motion is denied with respect to Count Four. The court concludes that section 20–327b cannot give rise to liability of negligence <u>per se,</u> and so the Motion with respect to Count Five is granted.

## V. CONCLUSION

For the reasons discussed above, the defendant's Motion for Summary Judgment (Doc. No. 330) is granted in part and denied in part. Count Two of the Third

22

Amended Complaint is stricken, <u>see</u> <u>supra</u> at f.n. 6. The Motion is granted with respect to Count Five.  Counts One, Three, and Four against the Carapezzis remain pending for trial.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 12th day of June 2025.

<u>/s/ Janet C. Hall</u>
Janet C. Hall
United States District Judge