**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RAMNARAIN JAIGOBIND, et al., | : | CIVIL CASE NO. |
| Plaintiffs, | : | 3:22-CV-01099-JCH |
| | : | |
| v. | : | |
| | : | |
| RONALD CARAPEZZI, et al., | : | JUNE 12, 2025 |
| Defendants. | : | |

**RULING ON DEFENDANTS MARY GREEN AND WILLIAM RAVEIS REAL ESTATE,**
**INC.'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 331).**

## I.  INTRODUCTION

Plaintiffs Ramnarain Jaigobind ("Mr. Jaigobind"), Michelle Jaigobind ("Mrs.

Jaigobind"), and Quiet Shores, LLC (together, "the plaintiffs") bring this action against

Mary Green ("Ms. Green"), William Raveis Real Estate ("WRRE") and other defendants[1]

pursuant to this court's diversity jurisdiction.  See Third Amended Complaint ("Third Am.

Compl.") (Doc. No. 229).  The plaintiffs' claims arise from an allegedly defective property

that was sold to them in 2021.  See id.  The plaintiffs allege that the sellers of the

Property, as well as the sellers' real estate agent, Ms. Green of WRRE, fraudulently and

negligently concealed defects to induce them to purchase the property.  See id.

Before the court is Ms. Green and WRRE's Motion for Summary Judgment.  See

Motion for Summary Judgment ("Green Mot.") (Doc. No. 331).  The Motion pertains to

---

[1] These other defendants are Ronald Carapezzi and Newll Carapezzi, the sellers of the Property, Conners Development LLC, the development firm that constructed the Property, Matt Conners, the sole member of the Conners Development LLC,  David Preusch Architect, the architectural firm that designed the Property, and Joseph A. Lattarulo, a home inspector retained by the plaintiffs.  See Third Am. Compl. at ¶¶ 3-12.

The present Motion was filed by Ms. Green and WRRE only and pertains only to the plaintiffs' claims against them.  Thus, in the present Ruling, the court discusses these other defendants only to the extent relevant to the present Motion.  For clarity, the court will avoid referencing "the defendants" unless referring to all of them.

the plaintiffs' claims against Ms. Green and WRRE only.  The plaintiffs oppose the

Motion.  <u>See</u> Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment

Filed by William Raveis Real Estate, Inc. and Mary Green ("Pl.'s Opp.") (Doc. No. 341).

<u>See</u> <u>also</u> Reply Brief in Support of Motion for Summary Judgment ("Green Reply.")

(Doc. No. 345).

For the reasons set forth below, the Motion is granted in part and denied in part.

## II.  BACKGROUND[2]

Ms. Green is a licensed real estate agent affiliated with the "Michelle & Company

Team" at WRRE.  <u>See</u> Plaintiff's Local Rule 56(a)2 Statement of Facts ("Pl.'s 56(a)2

Stmt.") ¶¶ 1-2 (Doc. No. 341-1); Defendants' Local Rule 56(a)1 Statement of Facts

("Defs.' 56(a)1 Stmt.") ¶ 5 (Doc. No. 331-1) ¶¶ 1-2.  Ms. Green represented Ronald and

Newell Carapezzi ("the Carapezzis") when they first purchased the property at 10 Gray

Lane in Westport, Connecticut ("the Property").  <u>See</u> Pl.'s 56(a)2 Stmt. ¶¶ 3-4; Defs.'

56(a)1 Stmt. ¶¶ 3-4.

The Carapezzis are also defendants in this action.  Prior to their closing on the

Property, in 2018 the Carpaezzis hired a home inspector called "Pillar to Post Home

Inspectors" to perform an inspection of the Property, which was newly constructed at the

time.  <u>See</u> Pl.'s 56(a)2 Stmt. ¶ 5; Defs.' 56(a)1 Stmt. ¶ 5.  The day of the inspection, Ms.

Green emailed Mr. Carapezzi "[s]ome moisture getting in to areas on roof decks in more

than 1 location.  This could be an issue. . . we will wait for report."  <u>See</u> <u>id.</u>  When Pillar

to Post issued their inspection report, it stated that:

---

[2] The court draws primarily from the plaintiffs' and Ms. Green and WRRE's Local Rule 56(a)
statements and exhibits in summarizing the material facts.  As it must, the court construes all disputed
facts in the light most favorable to the plaintiffs, the non-moving party.  It also notes where the facts are
disputed.

> There appear to be active leaks in the tiled-over flat roof decks in multiple areas. Water stains on composite trim and stucco were observed and tested with a moisture meter. Further consultation and repairs by a flat roof and exterior tile specialist are recommended to prevent leaks and secondary damage.

Pl.'s Ex. 24 at 36.  The parties dispute the extent to which these issues were resolved.  Ms. Green and WRRE contend that they understood the issues were fixed and cite an email from Ms. Green to the Carapezzis in which she stated "[p]er [the builder of the Property,] leaks were fixed on balconies."  See Defs.' 56(a)1 Stmt. ¶ 10.  The plaintiffs contend that these leaks and moisture issues were not addressed and that the same leaks persisted throughout the Carapezzis' ownership of the Property.  See Pl.'s 56(a)2 Stmt. ¶¶ 10-11.  The plaintiffs also cite the repair work that the Carpezzis did on balconies, patios, and the roof as evidence that issues persisted during the Carapezzi's ownership. See id.

Around August 2020, the Carapezzis decided to sell the Property and hired Ms. Green again as their listing agent.  See Pl.'s 56(a)2 Stmt. ¶ 13; Defs.' 56(a)1 Stmt. ¶ 13.  The parties dispute, generally, whether Ms. Green was aware of the Property's current condition issues that the Jaigobinds allege.  The plaintiffs, generally, contend that Ms. Green was aware of systemic moisture issues in the Property going back to the Pillar to Post inspection.  Ms. Green contends that she thought the issues had been remedied.  In his deposition, Mr. Carapezzi testified that he "think[s] [he] discussed" leaks and moisture issues "with [Ms. Green] at some point," and that he "probably" told Ms. Green about water issues with patios and decks.  Pl.'s Ex. C at 161:23-24; 223:25.  He also

testified that, "I'm sure I had a conversation with [Ms. Green] about the balconies and why we replaced them and that would have been it." Id. at 162:17-19. In Ms. Green's deposition, she testified that, had she seen active leaks, she thought they would have to be fixed or disclosed. Pl.'s Ex. B at 201:17-22. When asked whether she was aware of a series of leaks or related water damage, Ms. Green testified that "maybe [Mr. Carapezzi] mentioned that when" he told her the patios had to be replaced. Id. at 192:4-5. The plaintiffs also have come forward with text messages indicating that Ms. Green knew about painting that was done to the exterior of the house as the Carapezzis prepared to sell the Property, which they allege was done to cover-up water damage. See Pl.'s Ex. 192 at 2.

In late May or early June of 2021, the Jaigobinds, looking to purchase the Property, did a walkthrough with Ms. Green and their own real estate agent. See Pl.'s 56(a)2 Stmt. ¶ 33; Defs.' 56(a)1 Stmt. ¶ 33. The Jaigobinds visited the Property again about a week or ten days later. See Pl.'s 56(a)2 Stmt. ¶ 37; Defs.' 56(a)1 Stmt. ¶ 37. During the second visit, the plaintiffs allege that Ms. Green represented that the Property was "perfect, move in ready." Pl.'s 56(a)2 Stmt. ¶ 33. The Jaigobinds decided to purchase the Property, and they ultimately settled on a price of $10,000,000. See Pl.'s 56(a)2 Stmt. ¶ 40; Defs.' 56(a)1 Stmt. ¶ 40. On June 11, Mr. Jaigobind and the Carapezzis entered into a contract for the purchase of the Property. See Pl.'s 56(a)2 Stmt. ¶ 41; Defs.' 56(a)1 Stmt. ¶ 41. Attached to the contract was various paperwork, including a "Purchaser's Rider." See Pl.'s 56(a)2 Stmt. ¶ 43; Defs.' 56(a)1 Stmt. ¶ 43. The plaintiffs allege that the purchase paperwork for the Property, including the Purchaser's Rider, the Seller's Affidavit, and the Disclosure Form for the Property,

contained numerous misrepresentations about the condition of the Property.  Third. Am.
Compl. ¶¶ 50-56.  Ms. Green and WRRE deny that they had any role in drafting or
preparing these documents, although she did send the completed documents by email
to the Jaigobinds' real estate agent.[3]  Defs.' 56(a)1 Stmt. ¶¶ 43, 58.

Prior to closing, the Jaigobinds hired a home inspector, who conducted an
inspection of the interior and exterior of the Property.  See Pl.'s 56(a)2 Stmt. ¶¶ 46, 50;
Defs.' 56(a)1 Stmt. ¶¶ 46, 50.  The home inspector, who is also a defendant in this
litigation, failed to identify the leaks and moisture issues that the Jaigobinds now allege.
See Pl.'s 56(a)2 Stmt. ¶ 53; Defs.' 56(a)1 Stmt. ¶ 53.

The closing took place on June 29, 2021.  See Pl.'s 56(a)2 Stmt. ¶ 60; Defs.'
56(a)1 Stmt. ¶ 60.  On or after closing, the Jaigobinds deeded the Property to Quiet
Shores, LLC, a company formed by the Jaigobinds' legal counsel specifically for this
transaction.  See Pl.'s 56(a)2 Stmt. ¶¶ 44, 61; Defs.' 56(a)1 Stmt. ¶¶ 44, 61.  According
to the Operating Agreement executed for the LLC, the sole member of the LLC is the
Michelle Jaigobind Revocable Trust, of which Mrs. Jaigobind is the Trustee.[4]  See Pl.'s
56(a)2 Stmt. ¶ 45; Defs.' 56(a)1 Stmt. ¶ 45.

After closing, the Jaigobinds allege they discovered persistent water intrusion
issues throughout the Property, and that they have spent more than $3 million in repairs

---

[3] The plaintiffs assert in their Local Rule 56 Statements that "Ms. Green reviewed the closing
documents, which included the Sales Agreement, Sellers Affidavit, Purchasers Rider, and Disclosure
Form. . . . " Pl.'s 56(a)(2) Stmt. ¶ 43.  However, none of the sources cited by the plaintiffs support the
assertion that Ms. Green reviewed any of these documents for their factual accuracy.  Thus, the court
largely disregards the plaintiffs' assertion to this effect as conclusory.

[4] The parties Local Rule 56 statements do not state that Mrs. Jaigobind is the Trustee of the
Michelle Jaigobind Revocable Trust, but the plaintiffs have admitted as much elsewhere in the present
litigation.  See Ruling on Defendants Ronald Carapezzi and Newell Carapezzi's Motion for Summary
Judgment (Doc. No. 369) at 4.

to address these issues.  See generally, Third Am. Compl. On August 30, 2022, the plaintiffs brought claims against numerous defendants involved in the transaction to purchase the Property, including the Carapezzis, Mrs. Green, and WRRE.  Against Ms. Green and WRRE, the plaintiffs allege four causes of action: a claim of fraud or intentional misrepresentation (Count Fifteen), a claim of fraud by nondisclosure (Count Sixteen), a claim of negligent misrepresentation (Count Seventeen), and a claim of negligence per se (Count Eighteen). See Third Am. Compl. at ¶¶ 213-238.  Each of these claims is brought by all three plaintiffs, Mr. Jaigobind, Mrs. Jaigobind, and Quiet Shores, LLC.  See id.

On September 15, 2024, Ms. Green and WRRE filed the present Motion for Summary Judgment.  See Green Mot.; see also Memorandum of Law in Support of Motion for Summary Judgment ("Green Mem.") (Doc. No. 331-2).  The plaintiffs oppose the Motion.  See Pl.'s Opp.  On December 11, 2024, Ms. Green and WRRE filed a Reply.  See Reply Brief in Support of Motion for Summary Judgment ("Green Reply") (Doc. No. 345).

## III. LEGAL STANDARD

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016).  If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue exists where

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

## IV. DISCUSSION

The plaintiffs allege four causes of action against Ms. Green and WRRE: a claim of fraud or intentional misrepresentation (Count Fifteen), a claim of fraud by nondisclosure (Count Sixteen), a claim of negligent misrepresentation (Count Seventeen), and a claim of negligence per se (Count Eighteen). See Third Am. Compl. at ¶¶ 213-238. Each of these claims is brought by all three plaintiffs. See id.

Ms. Green and WRRE seek summary judgment on four grounds. First, they seek summary judgment on the claims of Mrs. Jaigobind and of Quiet Shores, LLC's, arguing that neither is a proper plaintiff in the present case. See Green Mem. at 16-20. Second, they argue that summary judgment should enter on all misrepresentation claims against them because Mrs. Green's statements amounted to opinion, puffery, or "sales talk," and that there is no evidence that Mrs. Green intended to deceive the plaintiffs. See id. at 20-35. Third, Ms. Green and WRRE argue that the plaintiffs did not rely on any of their statements about the condition of the Property, because they hired a third-party home inspector to inspect it prior to purchase. See id. at 35-36. Finally, Ms.

Green and WRRE argue that the disclosure report given to the plaintiffs cannot, as a matter of law, be the basis of a claim for negligence per se.  See id. at 36-40.  The court addresses each of these arguments in turn.

      A.     Whether Mrs. Jaigobind and Quiet Shores, LLC are proper plaintiffs

Ms. Green and WRRE argue that Mrs. Jaigobind and Quiet Shores, LLC are not proper plaintiffs in this case.  They argue that the evidence shows Mr. Jaigobind, not Mrs. Jaigobind, purchased the Property, and that because Quiet Shores, LLC did not exist when Mr. Jaigobind made the offer to purchase the Property, Quiet Shores LLC is also an improper plaintiff.  See id. at 16-20.  The court disagrees.

As it relates to Mrs. Jaigobind, the court has already addressed and rejected a similar argument in the Carapezzis' Motion for Summary Judgment, and incorporates that discussion here.  See Ruling on Defendant Ronald Carapezzi and Newell Carapezzi's Motion for Summary Judgment (Doc. No. 369) at 7-10.  In that Ruling, the court found that, drawing inferences in favor of the plaintiffs, a reasonable jury could find the Jaigobinds jointly decided to purchase the Property and did so using funds that belonged to both of them.  See id.  Because a reasonable jury could find that the Jaigobinds jointly decided to purchase the Property they could reasonably infer that they shared and discussed information about the Property between themselves in coming to a decision.  Thus, the court rejects the argument, made by both the Carapezzis in their Motion as well as Ms. Green and WRRE in their Motion, that Mrs. Jaigobind could not have received or relied on any misrepresentations from the defendants.

Ms. Green and WRRE also argue that Quiet Shores, LLC is not a proper plaintiff because it did not exist until after Mr. Jaigobind made an offer to purchase the Property,

and after the contract for sale was signed.  <u>See</u> <u>id.</u> at 19-20.  As a result, they argue that

the LLC cannot satisfy the elements of its misrepresentation claims, because the

corporation did not exist at the time of house visits and negotiations, and therefore

cannot have received representations of fact or relied on them before the Jaigobinds

decided to purchase the Property.  <u>See</u> id.  Drawing inferences in favor of the plaintiffs,

the court rejects this argument as overly formalistic.

The court notes that, in an earlier Motion to Dismiss, brought by the Carapezzis,

the court was asked to make precisely the opposite holding.  <u>See</u> Docket Ruling (Doc.

No. 348).  In that Motion, the moving parties argued that damages belong exclusively to

the current record owner of the Property, Quiet Shores, LLC and that, therefore, <u>only</u>

Quiet Shores, LLC among the plaintiffs had standing.  <u>See</u> <u>id.</u>  The court is now being

asked to conclude as a matter of law that, because Quiet Shores, LLC came into

existence after the Jaigobinds decided to purchase the Property, but before they closed

on the Property, Quiet Shores, LLC cannot maintain claims at all.

This case remains at a stage where the court must "resolve all ambiguities and

draw all permissible factual inferences in favor of the party against whom summary

judgment is sought," here, the plaintiffs.  <u>Sec. Ins. Co. of Hartford v. Old Dominion</u>

<u>Freight Line Inc.</u>, 391 F.3d 77, 83 (2d Cir. 2004).  The plaintiffs here bring serious

allegations against the defendants which, if proven, would entitle one or more of them to

recover.  At present, the factual record is not sufficiently developed to conclude with

particularity which plaintiffs are entitled to what share of the damages.  No party

seriously disputes that Quiet Shores, LLC is a vehicle through which the Jaigobinds

exercise management and ownership of the Property.  Drawing all inferences in favor of

the plaintiffs, the court cannot conclude that any one or more of the plaintiffs should be excluded from recovery in whole or in part of their damages, if any.

The court agrees with the plaintiffs' opposition to Ms. Green and WRRE, which argues that the LLC owes its existence to the representations made by the defendants. See Pl.'s Opp. at 22-23.  Because the LLC was created by the Jaigobinds' counsel in anticipation of the Jaigobinds' purchase, a reasonable jury could conclude that the representations of the various defendants were a but / for cause of Quiet Shores, LLC coming to own the Property.  Thus, even if the Jaigobinds were the ones to actually receive the representations from defendants, Quiet Shores, LLC could be said to rely on them.

Thus, the Motion is denied on these grounds with respect to the claims of Mrs. Jaigobind and Quiet Shores, LLC.

B.    Whether the Plaintiff's Misrepresentation Claims Against Ms. Green and WRRE Can Stand

Ms. Green and WRRE argue that the statements identified by the plaintiffs are inactionable as misrepresentations, for several reasons.  First, they argue that many of the representations the plaintiffs attribute to Ms. Green – specifically those in the purchase paperwork – are actually the representations of the sellers, not their real estate agent.  See Green Mem. at 29.  Second, with regard to the other representations attributed to Ms. Green, they argue that these representations are inactionable, because they are either opinion statements, predictions, or puffery, that is, sales talk. See Green Mem .at 20-28.  Third, pertaining to the defendants' fraud counts, Ms. Green and WRRE argue that there is no evidence that they intended to deceive the plaintiffs. See id. at 29-35.  For the third of these arguments, Ms. Green and WRRE appear to be

making two separate arguments: first, that Ms. Green had no knowledge or awareness of the alleged moisture issues or water damage and therefore cannot have made fraudulent statements to the contrary; and second, that the plaintiffs have come forward with no specific evidence of her intent to deceive.  See id.  Because Ms. Green's knowledge of the issues with the home is fundamental to the present Motion, the court will address these arguments in reverse order, first addressing whether Ms. Green knew about the issues with the Property.  Then the court will address whether the plaintiffs have evidence of an intent to deceive, followed by an examination of the specific statements made by Ms. Green.

1.    Ms. Green's Knowledge and Intent to Deceive

The court turns first to Ms. Green and WRRE's contention that Ms. Green had "no knowledge of active water leaking issues at the Property, and had no reason to know or believe that any water leaking would occur."  Id. at 35.  As evidence in support of this argument, the defendants cite several messages she sent to colleagues or supervisors at WRRE, such as "the house is absolutely perfect" and argue that these comments indicate she was unaware of any problems.  See id. at 35.  In opposition, however, the plaintiffs offer several pieces of evidence that they argue demonstrate Ms. Green knew about moisture issues and leaks.  First, the plaintiffs argue that the Pillar to Post inspection report, prior to the 2018 sale to the Carapezzis, put Ms. Green on notice that there were "active leaks in the tiled over flat roof decks in multiple areas," and as well as "water stains, wet composite trim, [and] wet stucco."  Pl.'s Ex. 24 at 36.  The report also recommended "further consultation and repairs by a flat roof and exterior tile specialist to prevent leaks and secondary damage", id., something which the plaintiffs

say never took place.  Thus, the plaintiffs contend Ms. Green was aware of unresolved issues, despite her message to Mr. Carapezzi that, "[p]er [the builder of the Property,] leaks were fixed on balconies."  See Pl.'s Ex. D ("Green Aff.") at ¶ 10.  Second, the plaintiffs cite Mr. Carapezzi's deposition, in which he testified that he was "sure [he] had a conversation with [Ms. Green] about the balconies and why we replaced them and that would have been it."  Id. at 162:17-19.  Finally, Ms. Green testified that she knew about leaks in the balconies, but that she thought it had been "completely corrected." Def.'s Ex. B at 66.  Fourth, the plaintiffs have provided text messages indicating that Ms. Green knew about painting that was done to the exterior of the house as the Carapezzis prepared to sell the Property, which the plaintiffs allege was done to cover-up water damage throughout the house and specifically to the patio and siding.  See Pl.'s Ex. 192 at 2.  This evidence, taken together, is sufficient for a reasonable jury to conclude that Ms. Green knew about water intrusion issues in the Property at the time of its sale to the Jaigobinds.  Thus, a material issue of fact exists about what Ms. Green knew about the issues alleged with the Property, and the court will not enter summary judgment on the grounds that she did not know about the issues the Jaigobinds now allege.

Second, Ms. Green and WRRE argue that the plaintiffs have failed to come forward with direct evidence of an intent to deceive on Ms. Green's part.  See Green Mem. at 29-35.  The plaintiffs reply that no direct evidence is required and, under Connecticut law, a jury may infer intent based on circumstantial evidence.  See Pl.'s Opp. at 32-33.  In the court's view, the plaintiffs correctly state the burden at this stage. As the plaintiffs point out in their Opposition, Connecticut law has long recognized that intent to defraud does not need to be proven by direct evidence, and that "intent to

defraud must usually. . . be proven by circumstantial evidence." <u>Busker v. United</u>
<u>Illuminating Co.</u>, 156 Conn. 456, 459 (1968).  Here, because a reasonable jury could
find that Ms. Green knew about the alleged condition issues with the Property, such a
jury could reasonably infer intent from circumstantial evidence surrounding her
communications with the plaintiffs.  Thus, the court concludes that there is a triable
issue of fact around Ms. Green and WRRE's intent. Summary judgment on this ground
is denied.

> 2. Whether the Representations in Purchase Paperwork are those of
> Ms. Green

Second, the court turns to Ms. Green and WRRE's argument that the
misrepresentations contained in purchase paperwork are the statements of the seller,
not Ms. Green or WRRE.  In their Memorandum, the plaintiffs list all of the statements
that they allege amount to "key misrepresentations" of Ms. Green and WRRE, and most
of these statements are representations contained in the Residential Property Condition
Report ("Disclosure Report"), Purchaser's Rider, Seller's Affidavit, or other purchase
paperwork for the Property.  <u>See</u> Pl.'s Opp. at 19-20.  However, the statements
contained in these documents are, by the terms of the documents themselves, the
representations of the sellers, not their estate agent.  The Disclosure Report, for
example, instructs "sellers" to answer "all questions to the best of [their] knowledge,"
and is signed and initialed by the <u>sellers</u> of the Property only, not real estate agents.
<u>See</u> Pl.'s Ex. 27 at 1,7.  Likewise, the Seller's Affidavit is a signed, sworn statement
from the Carapezzis, not Ms. Green or WRRE.  <u>See</u> Pl.'s Ex. 40.  Likewise, the
Purchaser's Rider, to the extent it contains fact representations, contains only the
representations of the sellers.  <u>See</u> Pl.'s Ex. 57 at 1 ("[s]eller represents that Seller has

no notice of any pending or threatened proceedings, litigation, or public agency . . .

hearings").

In addition to the purchase paperwork, the plaintiffs also refer to representations

in the list of "improvements" which they say deceptively described repairs of

construction defects as improvements.  See Pl.'s Opp. at 19.  This list was prepared by

Mr. Carapezzi and forwarded to the Jaigobinds' real estate agent by Ms. Green.  What

all of this paperwork has in common is that, on the face of these forms, all of the

representations come from the Carapezzis, not Ms. Green or WRRE.  The plaintiffs

argue that, by acting as an agent and forwarding these forms to the Jaigobinds on the

Carapezzis' behalf, despite knowing that they contained false representations, these

representations are also attributable to Ms. Green and WRRE as their own, fraudulent

statements. The court is not persuaded.

The parties do not dispute that these forms were provided by Ms. Green to the

Jaigobinds' real estate agent by email.  However, this fact is insufficient on its own to

create a genuine issue of material fact about whether the statements contained therein

– which are the statements of the "seller[s]" – are also the statements of Ms. Green for

the purpose of the fraud claim against her.  The plaintiffs argue that Ms. Green knew

these forms contained false statements and transmitted them anyway, and that the

Connecticut regulations governing real estate agents require disclosures of material

facts about the Property.  See Pl.'s Opp. at 26-27.  However, the problem with this

argument is that Ms. Green's knowledge, taken together with her forwarding forms

completed by the Carapezzis, only establishes a failure by Ms. Green to disclose known

facts.  Drawing inferences in favor of the plaintiffs, this failure to disclose, if proven with

14

the other elements, would only establish liability in fraudulent <u>nondisclosure</u> (Count

Sixteen).  <u>See</u> <u>Asnat Realty, LLC v. United Illuminating Co.</u>, 204 Conn. App. 313, 326

(2021) (listing "failure to disclose known facts" among the elements of fraudulent

nondisclosure).  However, the fact that Ms. Green forwarded these documents does not

by itself create an issue of material fact about whether these are "her" statements within

the meaning of a fraud claim.

Further, the plaintiffs offer no additional evidence of Ms. Green's involvement in

the preparation of these forms upon which a reasonable jury could find that the forms

contain "her" statements.  The plaintiffs have not come forward with evidence, for

example, that Ms. Green authored these forms, or advised the Carapezzis on how to fill

out the forms, or evidence that she transmitted the forms to the Jaigobinds with her own

personal guarantee about their correctness.[5]  Thus, there is no basis in evidence before

the court upon which a reasonable jury could find that these forms contain Ms. Green's

representations, for the purposes of the fraud claim against her.

Accordingly, the court holds that the plaintiffs cannot sustain claims for

misrepresentations against Ms. Green and WRRE based on the representations in the

Disclosure Report, the Seller's Affidavit, the Purchaser's Rider, or the list of

improvements, because the representations contained therein are the representations

of the Carapezzis, they are not the representations of Ms. Green or WRRE.  Thus, the

court grants partial summary judgment on the plaintiffs' claims of fraud (Count Fifteen),

---

[5] In their Local Rule 56(a)(2) Statement, the defendants claim that Ms. Green had "no role in drafting or preparing" the Purchasers' Rider.  <u>See</u> Def.'s 56(a)1 Stmt. at ¶ 43.  The plaintiffs dispute this claim, asserting that "Ms. Green reviewed the closing documents. . . [before] she passed them to the Jaigobinds."  <u>See</u> Pl.'s 56(a)2 Stmt. at ¶ 43  However, none of the evidence cited by the plaintiffs supports the assertion that she reviewed this paperwork for its factual accuracy, or more importantly, that she "draft[ed] or prepar[ed]" these forms.  Thus Ms. Green's statement is deemed admitted.

holding that the representations in the purchase paperwork and list of improvements cannot be the basis for such a claim.

In their list of statements they allege are actionable, the plaintiffs also list statements that Ms. Green made during pre-closing visits, such as stating the home is "perfection in every detail," and that there was "nothing to do at home, but rest and recharge in style and pure comfort."  Pl.'s Opp. at 19-20, Third Am. Compl. at ¶ 41. They also allege that, in response to a question about whether the Property ever sustained water damage during storms, Mrs. Carapezzi answered in the negative, to which Ms. Green added that the Property was so perfect that you could eat off the floor. See Ex. B at 114:8-10.  Thus, given that Count Fifteen is not based entirely on the purchase paperwork,  the court does not grant summary judgment on Count Fifteen in its entirety.

### 3. Whether the Remaining Statements are Actionable as Misrepresentations

Third, Ms. Green and WRRE argue that these remaining statements are not actionable as misrepresentations because they are either future predictions, opinion statements, sales talk, or "puffery."  The plaintiffs dispute these characterizations and argue that these statements are misrepresentations of fact, either intentional or negligent.  See Pl.'s Opp. at 23-26.  Drawing inferences in favor of the plaintiffs, the court agrees with the plaintiffs and cannot conclude on the present record that the statements are mere puffery.

First, the court rejects Ms. Green and WRRE's argument that some of these statements are based on predictions.  In particular, Ms. Green and WRRE point to a statement alleged in the Third Amended Complaint when, during a walk through, Mr.

16

Jaigobind asked Ms. Green whether she thought the Property would suffer any water or other damage during storms, and Ms. Green answered in the negative. See Third Am. Compl. at ¶ 59. Drawing inferences in favor of the plaintiffs, a reasonable jury could conclude that this is not just a question about future events but is a question about the present condition of the Property, i.e., its susceptibility to water or storm damage.

The stronger of these arguments is whether Ms. Green's statements are opinion statements or "puffery." Under Connecticut law, for a representation to be actionable, it must be "intended as one of fact as distinguished from one of opinion." Anastasia v. Beautiful You Hair Designs, Inc., 61 Conn. App. 471, 478 (2001). In addition, certain forms of "favorable comments by sellers with respect to their products" may be deemed mere "puffing" and thus not give rise to a claim of fraudulent misrepresentation. Gold v. Univ. of Bridgeport Sch. of L., 19 Conn. App. 379, 384 (1989).

In the court's view, there is a colorable argument that statements Ms. Green made to the Jaigobinds – calling the Property "perfect" or "move in ready" – are inactionable as sales talk. However, drawing inferences in favor the plaintiffs, the question largely turns on context, and the court cannot conclude at this stage that these statements are necessarily opinion statements or puffery. For example, the statement that the Property is "move in ready" could be a general, favorable marketing description of the Property if it were used to introduce the home, or included in an advertising brochure. However, if the statement was made in a different context – such as during or after a series of questions about the condition of the Property – a reasonable jury could find, based on that context, that it was a representation of fact expressing the absence of certain condition issues. The record before the court does not provide enough

17

context for this statement or for other statements for this court to decide the issue at a stage where it must draw inferences in favor of the plaintiffs. Thus, summary judgment on this ground is denied.

      C.      <u>Whether the Plaintiffs' Hiring of an Independent Inspector Negates the Element of Reliance</u>

Third, Ms. Green and WRRE argue that the plaintiffs did not rely on the representations of Ms. Green and WRRE, because they hired a third-party home inspector – who is also a defendant in this action – to inspect the Property prior to the purchase. <u>See</u> Green Mem. at 35-36. In their Opposition, the plaintiffs argue that their hiring of a home inspector does not excuse the other defendants from liability for alleged misrepresentations. <u>See</u> Pl.'s Opp. at 33-34. The court agrees with the plaintiffs.

In Connecticut, the elements of fraud require a plaintiff to prove that he or she "relied on the [fraudulent] statement to his [or her] detriment." <u>Stuart v. Freiberg</u>, 316 Conn. 809, 821 (2015). Likewise, to prevail on a claim of negligent misrepresentation, a plaintiff must prove, <u>inter alia</u>, that they "reasonably relied on the misrepresentation" in question. <u>Id.</u> "[C]onclusions with respect to the elements of fraud constitute findings of fact." <u>Sousa v. Sousa</u>, 173 Conn. App. 755, 768 (2017); <u>see also Giametti v. Inspections, Inc.</u>, 76 Conn. App. 352, 364 (2003) (discussing the element of reliance as a question of fact).

In their Memorandum, Ms. Green and WRRE seem to argue that, because the Jaigobinds hired a home inspector, they relied on the home inspector instead of representations made by other parties. Thus, they argue, the plaintiffs could not have

"relied," or "reasonably relied" on the statements of Ms. Green as a matter of law.  The court disagrees, for two reasons.  First, whether a plaintiff in a fraud or negligent misrepresentation claim relied on a misrepresentation is a question of fact.  Although Connecticut courts have treated the hiring of a home inspector as <u>evidence</u> that a plaintiff may not have relied on other representations, such evidence is not necessarily dispositive.  <u>See</u> <u>Giametti v. Inspections, Inc.</u>, 76 Conn. App. 352, 365 (2003) (finding the element of reliance was not proven, not only because the plaintiff hired a home inspector, but because of "the absence of any other evidence of actual reliance by the plaintiff").  In the present case, the plaintiffs testified in their summary judgment affidavits that, during their visits to the Property, Mr. Jaigobind specifically asked about a history of water issues, and that they relied on Ms. Green's answers, among other sources of information, in deciding to purchase the Property.  <u>See</u> Ex. E at ¶ 9; Ex. F at ¶ 9.  Thus, the court cannot reach the result in <u>Giametti</u> on summary judgment because the record contains other evidence of reliance by the plaintiffs.

Second, in the court's view, Ms. Green and WRRE are incorrect in their view that reliance is exclusive, that is, reliance on one source of information is mutually exclusive with reliance on another.  Taken to its extreme, this argument would make almost any misrepresentation inactionable where the plaintiff sought a second opinion.  According to the Third Restatement of the Law of Torts, the element of reliance is provable even when plaintiffs rely on multiple sources of information:

> "The element of reliance overlaps with (and may be considered a form of) the usual requirement in tort that a defendant's wrong be a factual or 'but for' cause of the harm that the plaintiff suffered. The plaintiff may have been influenced by several sources, or by multiple statements—some true, some false—made by the same party. Liability is nevertheless intact if the defendant's fraud made a necessary contribution to the plaintiff's

> loss, typically by inducing the plaintiff to enter a damaging transaction. If the plaintiff was subject to multiple influences, each of which would have been sufficient to cause the resulting loss, the defendant whose fraud was among those influences may be held liable even though it may appear that the fraud was not a 'but for' cause of the harm."

Restatement (Third) of Torts: Liab. for Econ. Harm § 11 (2020).  In the present case, a reasonable jury could find that the representations of Ms. Green and WRRE are "among the influences" that caused the plaintiffs to purchase the Property.  Id.  Thus, the court views summary judgment on this grounds as inappropriate.

       D.     <u>Whether the Plaintiffs' can Maintain a Negligence Per Se Claim</u>

       In addition to their claims of fraud, fraud by nondisclosure, and negligent misrepresentation (Counts Fifteen through Seventeen), the plaintiffs also bring a claim of negligence <u>per se</u> (Count Eighteen) against Ms. Green and WRRE.  <u>See</u> Third Am. Compl. at ¶¶ 213-238.  The basis for this negligence <u>per se</u> claim is section 20-327b of the Connecticut General Statutes, which requires sellers of residential property to provide a "written residential condition report" to potential buyers and sets forth the standard form for that report.  Conn. Gen. Stat. § 20-327b.  Count Eighteen of the plaintiffs Third Amended Complaint alleges that section § 20-327b creates a "legislatively superimposed duty and standard of care" on the part of real estate agents "to ensure that the sellers they represented made truthful disclosures to prospective buyers."  Third Am. Compl. at ¶ 235.  Thus, the plaintiffs allege that, by failing to ensure that the information on the Carapezzis' Disclosure Form was correct, Ms. Green and WRRE violated that standard of care and are liable in negligence <u>per se</u> for the misrepresentations contained in the form.

       In their Motion, Ms. Green and WRRE argue that section 20-327b does not

impose a duty on Ms. Green or WRRE, because it only creates disclosure obligations on the part of sellers, not real estate agents.  In their Opposition, the plaintiffs respond that section 20-327b "expressly imposes a duty" on Ms. Green and WRRE, because of language in the statute that says the following:

> "This report in no way relieves a real estate broker of the broker's obligation under the provisions of section 20-328-5a of the Regulations of Connecticut State Agencies to disclose any material facts. Failure to do so could result in punitive action taken against the broker, such as fines, suspension or revocation of license."

Conn. Gen. Stat. § 20-327b(d); Pl.'s Opp. at 34-35.  Further, the plaintiffs argue that the referenced regulations themselves can be a basis for liability in negligence per se.  The court disagrees with the plaintiffs.

To establish a claim for negligent misrepresentation, a plaintiff must prove "(1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result."  Stuart v. Freiberg, 316 Conn. 809, 822 (2015).  "Negligence per se operates to engraft a particular legislative standard onto the general standard of care imposed by traditional tort law principles, i.e., that standard of care to which an ordinarily prudent person would conform his conduct."  Town of Plainville v. Almost Home Animal Rescue & Shelter, Inc., 182 Conn. App. 55, 65–66 (2018).  "To establish negligence, the jury in a negligence per se case need not decide whether the defendant acted as an ordinarily prudent person would have acted under the circumstances. It merely decides whether the relevant statute or regulation has been violated."  Id. (cleaned up).

The court begins by noting that the plaintiffs advanced a similar theory of liability

against the Carapezzis, the sellers of the Property, alleging that misrepresentations on the Disclosure form were negligent per se. See Third Am. Compl. at ¶¶ 121-126. In its Ruling on the Carapezzis' Motion for Summary Judgment, the court granted summary judgment on this Count, concluding that section 20-327b does not afford a basis for a claim of negligence per se. See Ruling on Defendants Ronald Carapezzi and Newell Carapezzi's Motion for Summary Judgment (Doc. No. 369) at 20-22. The court incorporates that discussion here. In brief, the court reasoned that in enacting section 20-327b, the Connecticut legislature only intended to require sellers to make disclosures based on their actual knowledge of the condition of the property. See Giametti, 76 Conn. App. at 359. This court concluded that the legislature did not intend to create a duty on the part of sellers to know about any and all condition defects with the property. For example, the standard form laid out in section 20-327b contains the following question: "Roof leaks? If YES, explain:" See Conn. Gen. Stat. § 20-327b(d). The statute, and thus the standard disclosure form, obligate the seller to disclose any roof leaks within their actual knowledge. It does not, in this court's view, create a duty on the part of the seller to know about any and all roof leaks.

As it relates to Ms. Green and WRRE, the plaintiffs' argument goes one step further. The plaintiffs argue that section 20-327b not only sets forth a duty and standard of care on the part of sellers, but also on the part of real estate agents. For the same reasons articulated above, the court rejects the plaintiffs' assertion that section 20-327b requires more than the actual knowledge of sellers and their agents. Additionally, the plaintiffs' theory of negligence per se is further belied by the text of section 20-327b and the accompanying standard form, which repeatedly stress that the disclosures

contained therein are the disclosures of the seller.  See Conn. Gen. Stat. § 20-327b(d) (including in the standard form, in all capitalized letters, "YOUR REAL ESTATE LICENSEE CANNOT COMPLETE THIS FORM ON YOUR BEHALF"). Thus, Ms. Green and WRRE are correct in arguing that section 20-327b does not create obligations on the part of real estate agents.  The 20-327b form repeatedly notes that the Carapezzis are responsible for its content and, as noted above, the plaintiffs have come forward with no evidence that Ms. Green is responsible for its content.   For all of these reasons, the court concludes that section 20-327b is inapposite to claims against Ms. Green and WRRE.

In their opposition to summary judgment, the plaintiffs claim that they can also maintain a negligence per se claim against Ms. Green and WRRE on the basis of section 20-328-5a of the Regulations of Connecticut State Agencies.  Section 20-328-5a states that a real estate licensee "shall not misrepresent or conceal any material facts in any transaction."  Conn. Agencies Regs. 20-328-5a.  Ms. Green and WRRE object that this theory of negligence per se was not plead in the Third Amended Complaint.  Green Reply at 13-14.  Regardless, this theory of negligence per se suffers from much the same defect that their prior theory did.  The court is aware of no authority, and the plaintiffs cite none, that indicates that section 20-328-5a creates a duty on the part of real estate agents to disclose more than their actual knowledge.  The regulation only requires brokers to "exercise diligence at all times in obtaining and presenting accurate information in the broker's advertising and representations to the public."  Conn. Agencies Regs. 20-328-5a(c).  Thus, the court likewise rejects this regulation as a basis for a negligence per se claim.

Because section 20-327b does not create obligations for real estate agents, and because the court is aware of no authority allowing section 20-328-5a to be used as the basis for a negligence per se claim, the court grants Ms. Green and WRRE's Motion with respect to Count Eighteen.

## V.  CONCLUSION

For the reasons discussed above, the defendant's Motion for Summary Judgment (Doc. No. 331) is granted in part and denied in part.  The Motion is granted in part with respect to Count Fifteen, to the extent that the plaintiffs' claim is based on purchase paperwork.  The Motion is granted with respect to Count Eighteen.  Counts Fifteen, Sixteen, and Seventeen remain pending.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 12th day of June 2025.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge