**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RAMNARAIN JAIGOBIND, ET AL, | : | CIVIL CASE NO. |
|     Plaintiffs, | : | 3:22-CV-1099 (JCH) |
| | : | |
| v. | : | |
| | : | |
| RONALD CARAPEZZI, ET AL, | : | JUNE 12, 2025 |
|     Defendants. | : | |

**RULING ON DEFENDANTS MATT CONNERS AND CONNERS DEVELOPMENT, LLC's MOTION FOR SUMMARY JUDGMENT (DOC. NO. 332).**

## I.  INTRODUCTION

Plaintiffs Ramnarain Jaigobind ("Mr. Jaigobind"), Michelle Jaigobind ("Mrs. Jaigobind"), and Quiet Shores, LLC (together, "the plaintiffs") bring this action against Matt Conners ("Mr. Conners"), Conners Development, LLC, and other defendants[1] pursuant to this court's diversity jurisdiction.  See Third Amended Complaint ("Third Am. Compl.") (Doc. No. 229).  The plaintiffs' claims arise from an allegedly defective property that was built by Mr. Conners and Conners Development, LLC in 2017, and sold to the plaintiffs in 2021.  See id.  The plaintiffs allege that Mr. Conners and Conners Development, LLC were negligent in the construction of the property and later fraudulently concealed defects from them.  See id.

Before the court is Mr. Conners and Conners Development, LLC's Motion for

---

[1] These other defendants are Ronald Carapezzi and Newll Carapezzi, the sellers of the Property, Mary Green, the Carapezzis' real estate agent, and William Raveis Real Estate, the real estate brokerage firm that employed Ms. Green, David Preusch Architect, the architectural firm that designed the Property, and Joseph A. Lattarulo, a home inspector retained by the plaintiffs.  See Third Am. Compl. at ¶¶ 3-12.

The present Motion was flied by Mr. Conners and Conners Development, LLC only, and pertains only to the plaintiffs' claims against them.  Thus, in the present Ruling, the court discusses these other defendants only to the extent relevant to the present Motion.  For clarity, the court will avoid referencing "the defendants" unless referring to all of them.

Summary Judgment.  See Defendants' Motion for Summary Judgment ("Conners Mot.")
(Doc. No. 332).  The Motion pertains to the plaintiffs' claims against Mr. Conners and
Conners Development, LLC only.  The plaintiffs oppose the Motion.  See Plaintiffs'
Memorandum of Law in Opposition to Defendants, Matt Conners and Conners
Development, LLC's Motion for Summary Judgment ("Pl.'s Opp.") (Doc. No. 339).  See
also Reply Memorandum of Law In Support of Defendants Conners Development, LLC
and Matt Conners' Motion for Summary Judgment ("Conners Reply.") (Doc. No. 344).

For the reasons set forth below, the Motion is granted in part and denied in part.

## II.  BACKGROUND[2]

Matt Conners is the sole member of Conners' Development, LLC.  See Third Am.
Compl. at ¶ 5.[3]  Conners Development, LLC constructed the property at 10 Gray Lane
in Westport, Connecticut ("the Property") in July of 2017.  See Plaintiff's Local Rule
56(a)2 Statement of Facts ("Pl.'s 56(a)2 Stmt.") ¶ 4 (Doc. No. 339-1); Defendants' Local

---

[2] The court draws primarily from the plaintiffs' and the parties' Local Rule 56(a) statements and
exhibits in summarizing the material facts.  As it must, the court construes all disputed facts in the light
most favorable to the plaintiffs, the non-moving party.  It also notes where the facts are disputed.

[3] Remarkably, nowhere in the parties' moving papers, memoranda, or Local Rule Statements of
Material Facts, does either party explain what relationship Matt Conners has to Conners Development,
LLC.  Matt Conners and Conners Development, LLC, in their Memorandum, simply refer to them together
as "builders of the property."  See Conners' Mem. at 2.  Likewise, the plaintiffs refer to them collectively as
the "Conners Defendants".  Pl.'s Opp. at 1.  For clarity here, the court cites the Third Amended Complaint,
which alleges that Matt Conners is the "sole member of Conners Development[, LLC]."  See Third Am.
Compl. at ¶ 5.  The court includes this allegation here for as background. The court cannot treat it as an
undisputed fact for the purpose of this Ruling.

The court notes that this oversight conforms to a pattern the court has observed across the
dispositive motions in the present action.  The parties frequently refer to certain of the parties collectively,
treating the relationships between them, as well as the imputation of liability from one to another, as self
evident.  Certainly, the court understands that many references to "the Carapezzis" together, or "the
Conners defendants" together, for example, are made for brevity in the parties papers, and the court has
done the same in its Rulings.  However, the Carapezzis are not a single defendant, nor are Ms. Green
and her employer, William Raveis Real Estate, nor are Matt Conners and Conners Development LLC.
The parties are reminded that at trial, the court will hold the parties to their respective burdens of proof on
each claim and defense, as it applies to each plaintiff, and each defendant.

Rule 56(a)1 Statement of Facts ("Defs.' 56(a)1 Stmt.") (Doc. No. 332-2) ¶ 4.  Conners Development, LLC and Mr. Conners constructed the Property for SSR Properties, LLC, then the owner of the Property.  See Pl.'s 56(a)2 Stmt. ¶ 2; Defs.' 56(a)1 Stmt. ¶ 2.  After the Property was constructed, SSR Properties LLC sold it to Ronald Carapezzi ("Mr. Carapezzi") and Newell Carapezzi ("Mrs. Carapezzi") on or about November of 2018.  See Pl.'s 56(a)2 Stmt. ¶ 7; Defs.' 56(a)1 Stmt. ¶ 7.[4]

Prior to their purchase of the Property, the Carapezzis retained Pillar to Post, an inspection service, to inspect the Property.  Pillar to Post issued a report which identified moisture issues in the newly-constructed home, including "active leaks in the tiled over flat roof decks in multiple areas," as well as "water stains, wet composite trim, [and] wet stucco."  See Pl.'s Ex. 24 at 36.  During the Carapezzis' period of ownership of the Property, they spent more than $3 million on renovations.  See Pl.'s 56(a)2 Stmt. ¶ 8; Defs.' 56(a)1 Stmt. ¶ 8.[5]  The plaintiffs allege, in part, the Carapezzis did this to address these water intrusion issues.  For example, in his deposition, Mr. Carapezzi, who is also a defendant in this action, testified that during periods of rain, he observed water falling straight down off of the balconies, so he hired Matt Conners and Conners Development, LLC to install gutters.  See Pl.'s 56(a)2 Stmt. ¶ 8; Defs.' 56(a)1 Stmt. ¶ 8;

---

[4] The parties do not appear to dispute this fact, though Mr. Conners and Conners Development, LLC cite to the Third Amended Complaint rather than to record evidence.

[5] Although the plaintiffs deny this statement, their denial focuses on the characterization of these expenditures as "improvements" to the Property, rather than as repairs to defective construction.  See Pl.'s 56(a)2 Stmt. ¶ 8.  They do not deny that the Carapezzis spent $3 million.  Thus, the court deems that fact admitted.

Def.'s Ex. E at 165-169.[6]  The plaintiffs also allege that throughout the Carapezzis ownership, the Carapezzis struggled to address roof leaks.  The plaintiffs have come forward with photographs durindicating repair work to at least 10 different areas on the roof, which the plaintiffs allege was performed to address leaks.  See Pl.'s Exs. 52, 52(a)-(c).

The parties in this litigation generally dispute the extent of these leaks, as well as the extent to which they were addressed by the Carapezzis' renovations.  In his deposition, Mr. Carapezzi admitted that there had been "occasional leaks" in some areas.  Def.'s Ex. B at 92-93.  He also testified that he was aware of leaks on the exterior balconies that stained the ceilings in two areas.  See Pl.'s 56(a)2 Stmt. ¶ 8; Defs.' 56(a)1 Stmt. ¶ 8; Def.'s Ex. E at 93.[7]  It is undisputed that eventually Mr. Carapezzi retained two other construction companies other than Conners Development, LLC, to tear down and completely replace the balcony patios.  See Pl.'s 56(a)2 Stmt. ¶ 12; Defs.' 56(a)1 Stmt. ¶ 12.

In a series of emails to Mr. Conners, Mr. Carapezzi sought reimbursement from Mr. Conners for the replacement of the patios, blaming a "series of constant leaks and related damage . . . stemming from your defective construction."  Pl.'s Ex. 37 at 1.  The plaintiffs have also come forward with text messages between Mr. Carapezzi and Mr. Conners in the fall of 2020, in which Mr. Carapezzi repeatedly asks for updates on an "insurance settlement" and "[i]nsurance [r]eimbursement," and threatens further "legal

---

[6] The plaintiffs' response refers, with no explanation, to their answer to ¶ 9 of the Conners' Local Rule Statement, not even clarifying whether this statement is admitted or denied. Their answer to ¶ 9 does not dispute that Mr. Carapezzi hired Mr. Conners to put up gutters, so the court deems that fact admitted.

[7] The plaintiffs' response to this statement is non-responsive as to whether Mr. Carapezzi observed these leaks, so the court deems that fact admitted.

proceedings" against Mr. Conners.  Pl.'s Ex. 56 at 1-2.

The parties dispute whether these combined efforts resolved the water damage and moisture issues in the Property.  See Pl.'s 56(a)2 Stmt. ¶ 9; Defs.' 56(a)1 Stmt. ¶ 9. In 2020, the Carapezzis decided to sell the Property.  They hired a real estate agent and listed the Property for sale.  The Carapezzis completed a "Residential Property Condition Report," which did not disclose any history of water intrusion or water damage.  See Def.'s Ex. G.  The plaintiffs also allege that no water issues were disclosed to them during in-person walkthroughs of the Property.  See Third Am. Compl. at ¶ 59. The plaintiffs purchased the Property from the Carapezzis in June of 2021, for $10,000,000.  See Pl.'s 56(a)2 Stmt. ¶ 16; Defs.' 56(a)1 Stmt. ¶ 16.

The Jaigobinds met Mr. Conners for the first time on the day of closing.  See Pl.'s 56(a)2 Stmt. ¶ 19; Defs.' 56(a)1 Stmt. ¶19.  That day, the Carapezzis' real estate agent, Mary Green, advised the Jaigobinds that Mr. Conners built the house, and that he would come by to meet the plaintiffs.  According to Ms. Jaigobind's deposition testimony, when he arrived, he told the Jaigobinds he was the builder of the Property and offered his services to the plaintiffs for the future.  Ex. D ("Ms. Jaigobind Dep.") at 59-60.

On July 7, 2021, about a week after closing, the Jaigobinds discovered a leak infiltrating the support beam in the family room.  See Pl.'s 56(a)2 Stmt. ¶ 23; Defs.' 56(a)1 Stmt. ¶ 23.  Mrs. Jaigobind asked Mr. Conners to investigate the source of the leak, and he went up onto the roof of the Property.  See Pl.'s 56(a)2 Stmt. ¶¶ 24-25; Defs.' 56(a)1 Stmt. ¶¶ 24-25.  Mr. Conners came down from the roof holding a plastic yogurt cup full of twigs in it.[8]  See Pl.'s 56(a)2 Stmt. ¶ 26; Defs.' 56(a)1 Stmt. ¶ 26.

---

[8]Mrs. Jaigobind, in her deposition, testified instead that it was a Mott's applesauce cup.  See Def.'s Ex. I at 69.  The court regards this discrepancy as not material.

According to Mrs. Jaigobind, Mr. Conners told her that he had found the plastic cup stuck in a gutter on the roof, and that it was the cause of the leak.  See Pl.'s 56(a)2 Stmt. ¶ 27; Defs.' 56(a)1 Stmt. ¶ 27.  Mr. Conners, in his deposition, said that he did not attribute the leak entirely to the cup, but told Mrs. Jaigobind that the yogurt cup "was not helping anything," and further advised Mrs. Jaigobind that they "needed to take the siding off to see what was going on."  See Pl.'s 56(a)2 Stmt. ¶ 31; Defs.' 56(a)1 Stmt. ¶ 31.  Mrs. Jaigobind disputes that Mr. Conners advised her to investigate further by removing the siding and testified that Mr. Conners told her that the cup "caused the leak."  See Pl.'s 56(a)2 Stmt. ¶ 34; Defs.' 56(a)1 Stmt. ¶ 34; Def.'s Ex. I at 229:16.  The plaintiffs allege that, by blaming the leak on the yogurt cup, Mr. Conners was fraudulently concealing the true source of the leaks – his allegedly defective construction.  Third Am. Compl. at ¶ 76.  The plaintiffs allege that, based on Mr. Conners representations, they did not hire anyone to investigate the source of leaks until several months after Conners' misrepresentations, and that they spent months looking for and working with other contractors to evaluate and design a new gutter system, which they were led to believe was the cause of the leaks.  See Pl.'s 56(a)2 Stmt. ¶ 38.  During a later conversation with Mr. Conners, he informed the Jaigobinds that the Carapezzis had redone the balconies and glass railings on the properties, though the plaintiffs maintain that he continued to conceal the history of water intrusion and damage.  See Pl.'s 56(a)2 Stmt. ¶ 40; Defs.' 56(a)1 Stmt. ¶ 40.

During the course of the Jaigobinds' ownership, they would become aware of what they allege are systemic issues of water intrusion and leaks in the Property.  The Jaigobinds allege that they have spent millions of dollars of their own money to

investigate and repair the defects.  See Third Am. Compl. at ¶ 98.  On August 30, 2022, the Jaigobinds filed the present action in federal court, bringing claims against the Carapezzis, Mr. Conners and Conners Development, the Carapezzi's real estate agent, and their own home inspector, among others.  Against Mr. Conners and Conners Development LLC, the Jaigobinds brought the following claims: Negligence (Count Six), Fraud or Intentional Misrepresentation (Count Seven), Fraud by Nondisclosure (Count Eight), Negligent Misrepresentation (Count Nine), and violations of the Connecticut Unfair Trade Practices Act ("CUTPA") (Count Ten), Conn. Gen. Stat. § 42-110a et. seq. See Third Am. Compl. at ¶¶ 127-180.  Each of these claims is brought by all three plaintiffs, Mr. Jaigobind, Mrs. Jaigobind, and Quiet Shores, LLC, against both Mr. Conners and Conners Development, LLC.  See id.

On September 16, 2024, Mr. Conners and Conners Development, LLC filed their Motion for Summary Judgment.  See Conners Mot.; see also Memorandum of Law in Support of Motion for Summary Judgment ("Conners Mem.") (Doc. No. 332-1).  The plaintiffs oppose the Motion.  See Pl.'s Opp.  On December 11, 2024, Mr. Conners and Conners Development, LLC filed a Reply.  See  Reply Memorandum of Law in Support of Defendants Conners Development, LLC and Matt Conners' Motion for Summary Judgment ("Conners Reply") (Doc. No. 344).

## III. LEGAL STANDARD

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64,

71-72 (2d Cir. 2016).  If the moving party satisfies this burden, the nonmoving party

must set forth specific facts demonstrating that there is indeed "a genuine issue for

trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue exists where

"the evidence is such that a reasonable jury could return a verdict for the nonmoving

party."  Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

Unsupported allegations do not create a material issue of fact and cannot overcome a

properly supported motion for summary judgment.  See Weinstock v. Columbia Univ.,

224 F.3d 33, 41 (2d Cir. 2000).  In assessing the record to determine whether there are

disputed issues of material fact, the trial court must "resolve all ambiguities and draw all

inferences in favor of the party against whom summary judgment is sought."  LaFond v.

Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

## IV. DISCUSSION

The plaintiffs allege five causes of action against Mr. Conners and Conners

Development, LLC: Negligence (Count Six), Fraud or Intentional Misrepresentation

(Count Seven), Fraud by Nondisclosure (Count Eight), Negligent Misrepresentation

(Count Nine), and violations of the Connecticut Unfair Trade Practices Act ("CUTPA")

(Count Ten), section 42-110a et. seq.  See Third Am. Compl. at ¶¶ 127-180.  Mr.

Conners and Conners Development, LLC seek summary judgment on each claim.

A.    Negligent Construction Claim[9]

Count Six of the Third Amended Complaint is a claim against Mr. Conners and

Conners Development, LLC for negligent construction.  See Third Am. Compl. at ¶¶

---

[9] In this Ruling, the court addresses defendants' arguments in the order of claims as they are pled in the Third Amended Complaint, not in the order they appear in the Conners Motion.

127-134.  The plaintiffs allege that Mr. Conners and Conners Development, LLC failed to exercise the "degree of care which a skilled builder of ordinary prudence" in constructing the Property, and failed to "adequately supervise the work of [their] employees, agents and/or subcontractors in the construction of the Property," among other things.  See id.

Mr. Conners and Conners Development, LLC offer two arguments in support of summary judgment on Count Six.[10]  First, the defendants argue that the plaintiffs have not provided any evidence that Mr. Conners and Conners Development, LLC were negligent in their construction work or supervision of construction employees or subcontractors.  See Conners Mem. at 20-21.  Second, they argue that Mr. Conners and Conners Development, LLC owed no duty to the plaintiffs, because the plaintiffs were subsequent purchasers who were not in contractual privity with Mr. Conners or Conners Development, LLC.  See Conners Mem. 21-23.

The first of these arguments – that the plaintiffs have come forward with no evidence of negligent construction – is a non-starter at the summary judgment stage. The plaintiffs have introduced ample evidence of extensive repairs by the Carapezzis,

---

[10] Bizarrely, at Oral Argument counsel for Mr. Conners claimed that he did not move for summary judgment on Count Six.  However, the introduction to their Memorandum states that the Connors move for summary judgment as to "the Plaintiffs' Third Amended Complaint", and the Conclusion refers to "the defendants['] Motion for Summary Judgment as to Counts Six, Seven, Eight, and Nine of the Plaintiff's [sic] Amended Complaint."  Conners Mem. at 1, 29.  Further, although their brief is frequently nonspecific about which negligence claim it refers to, see id. at 20 ("negligence claims"), the Conners defendants devote at least three pages to several arguments that are unquestionably about Count Six, because it addresses the evidence of negligent construction and whether Conners was in privity with the plaintiffs when constructing the Property.  See Conners Mem. at 20-22.

Contrary to counsel's bizarre representation at oral argument, on the basis of pages 20-22 of their Memorandum, it appears quite clear to the court that they are moving for summary judgment on Count Six.  The court studied these arguments, prepared questions about these arguments, and researched caselaw about these arguments.  The court is extremely troubled that counsel would act like he never filed, let alone signed under Rule 11, his Motion.

the first inhabitants of the newly-constructed home built by Mr. Conners.  A reasonable jury can infer that this repairwork was necessary due to issues with the original construction.  In addition, this work included demolishing and replacing the balconies. In an email to Mr. Conners, Mr. Carapezzi attributed this repair work to a "series of constant leaks and related damage . . . stemming from your defective construction." Pl.'s Ex. 37 at 1.  On the basis of this and other evidence, a reasonable jury could find that there were defects in Mr. Conners' original construction.  Because a genuine issue of fact exists about whether construction defects existed, summary judgment is denied on this basis.

The court turns to Mr. Conners and Conners Development, LLCs' second argument, that they did not owe a duty to subsequent purchasers like the Jaigobinds. "The essential elements of a cause of action in negligence are . . . . duty; breach of that duty; causation; and actual injury."  Sic v. Nunan, 307 Conn. 399, 406, (2012).  "The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand."  Id.  "If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant."  Id. A "duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act."  Nazami v. Patrons Mut. Ins. Co., 280 Conn. 619, 630–31 (2006).

Mr. Conners and Conners Development, LLC argue that they owe no duty to the Jaigobinds as subsequent purchasers, because Conners Development, LLC had no

contract with the Jaigobinds.  See Conners Mem. at 21-23.  Mr. Conners argues that this lack of privity with the Jaigobinds, as well as their lack of third-party beneficiary status under the original construction contract, compels the conclusion that Mr. Conners and Conners Development, LLC owed no duty to the plaintiffs.  See id.

The problem with this argument is that it conflates the tort claim of negligence with claims based on breach of contract or breach of warranties (or third-party beneficiary claims, which are a species of contract claim).  The Connecticut Supreme Court has held that in a "suit by a subsequent purchaser," "the requirement of privity should only be applicable to actions growing out of contract theory and should be irrelevant to tort actions."  Coburn v. Lenox Homes, Inc., 173 Conn. 567, 574 (1977).  Thus, the lack of privity is not fatal to a negligence claim.

In Coburn, subsequent purchasers of a property brought claims against the original builder, due to a faulty sceptic system.  The plaintiffs' claims sounded in both contract and negligence.  The Connecticut Supreme Court affirmed the dismissal of the subsequent purchaser's contract claims, but held that the lack of privity was not a bar to negligence claims:

> "There is no sound reason why [the purchaser] should be prevented from recovering for property damage or personal injury merely because he is not in privity with the builder or contractor responsible for such work. We therefore hold that a builder or contractor may be liable for injuries or damage caused by his negligence to persons with whom he has no contractual relation and even though his work is completed and accepted by the owner before the injuries or damage occurred. Liability will be imposed, however, only if it is foreseeable that the contractor's work, if negligently done, may cause damage to the property or injury to persons living on or using the premises."

Id. at 575, quoting McDonough v. Whalen, 365 Mass. 506, 511 (1974).  Later, the Connecticut Supreme Court extended this holding to negligence claims against

architects, stating "[i]t is now the almost universal rule that the contractor is liable to all those who may foreseeably be injured by the structure . . .when the work is negligently done." Zapata v. Burns, 207 Conn. 496, 517 (1988). Neither party discussed Coburn or Zapata in their memoranda,[11] but these remain the law in Connecticut. See Demond v. Project Serv., LLC, 331 Conn. 816, 846 (2019) ("a defendant who undertakes to perform contractual services to another cannot raise a nonprivity defense against a third person who is injured by the defendant's negligent performance."); citing Glanzer v. Shepard, 233 N.Y. 236, 239 (1922) (Cardozo, J.).[12] The Demond case is controlling precedent in this court.

In the present case, the plaintiffs purchased the Property less than four years after its construction. The plaintiffs have introduced evidence upon which a reasonable jury could find that the Carapezzis, the first purchasers of the home, dealt with water intrusion issues that they attributed to Mr. Conners's negligent construction. In light of this evidence, a reasonable jury could find that it was foreseeable that negligent construction would cause the Jaigobinds to suffer the effects of similar water damage and intrusion. Because such damage is foreseeable, a reasonable jury could conclude

---

[11] The court expresses its concerned that neither party discussed Coburn or Zapata in its briefs, given that counsel's duty of candor to the court includes an obligation to raise legal authority in the controlling jurisdiction. Both cases deal directly with subsequent purchasers of real property bringing negligence claims for negligent design or construction. A quick search reveals that Coburn and Zapata have been cited more than 100 times each by Connecticut courts, including recently. See, e.g., See, e.g., Iron Shields Inv., LLC v. Miller, 2019 WL 3219342, at *5 (Conn. Super. Ct. June 5, 2019) (citing both Coburn and Zapata, holding that a "lack of privity is not an obstacle to finding that the harm to the plaintiff was foreseeable.")

[12] It is worth noting that Coburn was subsequently appealed to the Connecticut Supreme Court a second time, after the plaintiffs prevailed at trial on their negligence claim. See Coburn v. Lenox Homes, Inc., 186 Conn. 370 (1982) ("Coburn II"). In Coburn II, the defendants argued that the trial court erred by finding sufficient evidence of a duty by the builder to the subsequent purchaser. The Connecticut Supreme Court again rejected this argument again, then based on trial evidence, and held that "a duty to exercise due care arose" on the part of the builder. Id. at 378.

that Mr. Conners and Conners Development, LLC had a duty to the Jaigobinds as subsequent purchasers.   Because the lack of privity is not a bar to the negligence claims of subsequent purchasers, see Coburn, 173 Conn. at 574, the court denies summary judgment on this ground.

      B.    Fraud Claims

Counts Seven and Eight of the Third Amended Complaint bring claims of Fraud (Count Seven) and Fraud by Nondisclosure (Count Eight) against Mr. Conners and Conners Development, LLC.  See Third Am. Compl. at ¶¶ 135-162.  The court begins by noting that these Counts are unclear as to whether they seek to hold Mr. Conners and Conners Development, LLC liable only for Mr. Conners's statements to the Jaigobinds after they purchased the Property (the yogurt cup incident and subsequent conversation), or whether these Counts seek to hold Mr. Conners and Conners' LLC liable for inducing the Jaigobinds to the purchase the Property in the first place.  See id. The court begins by providing clarity on that issue.

In their Motion, Mr. Conners and Conners Development, LLC argue that they cannot be liable for fraudulently inducing the plaintiffs to purchase the Property, because Mr. Conners never met, nor communicated with, the Jaigobinds prior to the date of closing.  See Conners Mem. at 13.  The court agrees.

In Connecticut, "[t]he four essential elements of fraud are (1) that a false representation of fact was made; (2) that the party making the representation knew it to be false; (3) that the representation was made to induce action by the other party; and (4) that the other party did so act to her detriment."  Chase Manhattan Mortg. Corp. v. Machado, 83 Conn. App. 183, 188 (2004).  The first of these elements requires a

plaintiff to prove that the defendant made a false statement.  Here, it is undisputed that

Mr. Conners never made any statements to the plaintiffs prior to closing.  Thus, to the

extent that Count Seven seeks to hold Mr. Conners and Conners Development, LLC

liable for inducing the Jaigobinds to purchase the Property, the claim falls at the first

element.

The court reaches the same conclusion with respect to Count Eight.  "Fraud by

nondisclosure, which expands on the first three of [the] four elements [of fraud], involves

the failure to make a full and fair disclosure of known facts connected with a matter

about which a party has assumed to speak, under circumstances in which there was a

duty to speak."  Asnat Realty, LLC v. United Illuminating Co., 204 Conn. App. 313, 321

(2021).  Here, given that it is undisputed that Mr. Conners did not meet the plaintiffs until

the date of closing, a jury has no basis to find any of these three elements.  Further,

there is no basis to conclude that Mr. Conners or Conners Development, LLC "assumed

to speak," or that there were "circumstances in which there was a duty to speak."  Id.

Nor do the plaintiffs offer any plausible basis in their Opposition.  Certainly, other

defendants may have "assumed to speak" or there may have been a "duty to speak" on

the part of other defendants leading up to the purchase of the Property, but the court

cannot conclude that there was such a basis for the Conners defendants when Mr.

Conners had never met the Jaigobinds prior to the purchase.

Thus, the court grants the Motion in part on these claims, to the extent that

Counts Seven and Eight seek to hold Mr. Conners and Conners Development, LLC

liable for inducing the Jaigobinds to purchase the Property.

However, Counts Seven and Eight also allege that the Conners defendants, in

their subsequent interactions with the Jaigobinds after the purchase of the Property, fraudulently concealed a known history of leaks and water intrusion.  See Third Am. Compl. at ¶¶ 135-162.  Mr. Conners and Conners Development, LLC make three further arguments seeking summary judgment on these Counts.  First, they argue that the plaintiffs have failed to identify an untrue statement made to them, because there was, in fact, a yogurt cup stuck in the gutter when Mr. Conners climbed on the roof.  See Conners Mem. at 14.  Second, they argue that there is no evidence Mr. Conners was aware of continuing leaks, because Mr. Carapezzi had previously represented that the work done by other contractors fixed the issue.  See id. at 15.   Third,  Mr. Conners and Conners Development, LLC argue that there is no evidence that would allow a jury to infer that their statements were made with fraudulent intent.  See id. at 16.  The court regards all three of these arguments as insufficient at the summary judgment stage.

First, Mr. Conners' argument that the plaintiffs have failed to identify an untrue statement requires the court to accept, as true, Mr. Conners' testimony, rather than the conflicting testimony of Mrs. Jaigobind.  See Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996) ("[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment").  In his deposition, Mr. Conners testified that he told Mrs. Jaigobind that the yogurt cup "was not helping anything", and that Jaigobinds should have the exterior siding removed to further investigate the cause of the leak.  See Pl.'s 56(a)2 Stmt. ¶ 31; Defs.' 56(a)1 Stmt. ¶ 31.  Under this version of the facts, it is difficult to see how Mr. Conners' statements could be strictly untrue.  However, Mrs. Jaigobind characterized this conversation very differently in her testimony, stating that Mr. Conners told her

definitively that the cup had "caused the leak," and never advised her to remove the siding to investigate further. See Pl.'s 56(a)2 Stmt. ¶ 34; Defs.' 56(a)1 Stmt. ¶ 34;  Def.'s Ex. I at 229:16.  Based on Mrs. Jaigobind's testimony, a reasonable jury could find that Mr. Conners' statement was a dishonest attempt to deflect blame away from any construction defects by blaming the leaks on the yogurt cup.  Thus, the court denies summary judgment on this ground.

Second, the court denies summary judgment on the grounds that Mr. Conners lacked knowledge of ongoing defects, and therefore cannot have made a fraudulent statement.  Based on Mr. Carapezzi's attempts to recoup reimbursement from Mr. Conners for the demolition of the balconies, a reasonable jury could find that Mr. Conners was aware of systemic water intrusion issues unrelated to the plastic cup in the gutter.

Third, the Conners defendants argue that "nothing before the court permits an inference that the defendants had ill intent" in describing the cup as the cause of the leak.  See Conners Mem. at 16.  However, Connecticut law is clear that, while "fraud is not [to be] presumed," intent may be shown by "circumstantial evidence" where "rational minds could reasonably and logically draw the inference."  Puro v. Henry, 188 Conn. 301, 310 (1982).  In the present case, there may be no direct, "smoking-gun" evidence of Mr. Conners' intent to conceal defects, but a reasonable jury could infer it from the circumstances surrounding the "yogurt cup" incident.  Thus, summary judgment on this ground is denied.

The Conners defendants make one final argument related to the plaintiffs' fraud claims.  They argue that the plaintiffs' allegation Mr. Conners told the plaintiffs he had

resolved the leaks at the Property is not plead with sufficient particularity.  See Third

Am. Compl. at ¶ 170; Conners Mem. at 15.  Rule 9(b) of the Federal Rules of Civil

Procedure requires that "[i]n alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Read

in context of the other allegations, however, it appears to the court that the plaintiffs are

alleging that this representation was made during the same conversation in which Mr.

Conners informed Mrs. Jaigobind about the yogurt cup.  The Third Amended Complaint

alleges where and when that conversation took place.  See Third. Am. Compl. at ¶¶ 164

("Conners Development[, LLC] and [Mr.] Conners undertook to investigate the case of

the leak" "on or about July 7, 2021).  Thus, the court concludes this allegation, read in

context, does not lack the particularity required by Rule 9(b), and partial summary

judgment is denied on this ground.

 In sum, the court grants the Motion in part with respect to Counts Seven and

Eight, only to the extent that those Counts seek to hold Mr. Conners and Conners LLC

liable for inducing the plaintiffs to purchase the Property.

 C. <u>Negligent Misrepresentation Claim</u>

 Count Nine of the plaintiffs' operative Complaint is a claim for negligent

misrepresentation against Mr. Conners and Conners Development, LLC.  See Third Am.

Compl. at ¶¶ 163-174.  In the court's view, the arguments raised by the Conners

defendants with regard to this claim largely retread the same grounds as their

arguments about the plaintiffs' fraud claims.  See Conners Mem. at 27-28 (arguing that

the conversation between Mr. Conners and Mrs. Jaigobind, as Mr. Conners testified that

it happened, contained no untrue statement on the part of Mr. Conners).  The court will

not repeat its rejection of these arguments.

However, the court grants the Motion to the same extent that it did for Counts Seven and Eight. Mr. Conners and Conners Development, LLC argue that, because Mr. Conners made no statements to the Jaigobinds prior to closing, the plaintiffs cannot prevail on Count Nine to the extent that the claim seeks to hold the Conners defendants liable for inducing them to purchase the Property in the first place. See Conners Mem. at 26-27. Again, the court agrees.

To prevail on a claim of negligent misrepresentation in Connecticut, a plaintiff must prove, among other elements, that "the defendant made a misrepresentation of fact." Stuart v. Freiberg, 316 Conn. 809, 822 (2015). Here, it is undisputed that Mr. Conners made no statements of fact to the plaintiffs prior to closing. Thus, the court grants partial summary judgment on Count Nine to the extent that it relates to any events that took place prior to the Jaigobinds meeting Mr. Conners.

D.    CUTPA

The last claim that the plaintiffs bring against Mr. Conners and Conners Development, LLC (Count Ten) is a claim under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a et. seq. See Third Am. Compl. at ¶¶ 175-180. As a preliminary matter, this claim as pled is exceedingly vague about which of the actions of the defendants are alleged to violate CUTPA, saying only that, "[a]s a direct and proximate result of Conners Development's and Conners' improper conduct as described above, the Conners Development [sic] and Conners committed unfair and deceptive acts or trade practices as defined in Connecticut General Statute § 42-110b." Id. at ¶ 178. The Third Amended Complaint does not lay out what actions are alleged to

be unfair and/or deceptive.  As a result, the court and parties are left to speculate whether the plaintiffs' CUTPA claims are related to the construction of the Property, the representations Mr. Conners made to the plaintiffs after the purchase of the Property, or both.  In their discussion of Count Ten in their Opposition, the plaintiffs cite only events after the plaintiffs' closing, so the court construes this claim as dealing with Mr. Conners' alleged misrepresentations only.

Mr. Conners and Conners Development, LLC make two arguments in support of their Motion for Summary Judgment on Count Ten.  First, they argue that Mr. Conners made no untrue statement to Mrs. Jaigobind, so there can be no liability under CUTPA.  See Conners Mem. at 18.  The court has already rejected this argument in the context of the plaintiffs' fraud claims, on the basis that a reasonable jury could find otherwise, and the court does not reprise its reasoning here.  See, supra, at 15.

Second, the Conners defendants argue that, because they were not in privity with the plaintiffs at the time of their alleged misrepresentations, they were not engaged in "trade or commerce" with the plaintiffs as those term are defined by CUTPA, and thus could not have committed unfair or deceptive trade practices.  See Conners Mot. at 17.  In their Opposition, the plaintiffs argue that CUTPA liberally construes "trade or commerce" to include situations where plaintiffs and defendants are not in privity, and that there are issues of fact regarding whether Mr. Conners and Conners Development, LLC were engaged in "trade or commerce."  See Pl.'s Opp. at 19-22.  The court agrees with the plaintiffs.

To prevail on a claim under CUTPA, a plaintiff must prove that they "(1) suffered an ascertainable loss of money or property, (2) that was caused by, (3) an unfair method

of competition or an unfair or deceptive act in the conduct of any trade or commerce."

Edwards v. N. Am. Power & Gas, LLC, 120 F. Supp. 3d 132, 141 (D. Conn. 2015).

CUTPA is "remedial in character" and "must be liberally construed in favor of those

whom the legislature intended to benefit."  Willow Springs Condo. Ass'n, Inc. v. Seventh

BRT Dev. Corp., 245 Conn. 1, 42 (1998).

CUTPA defines "trade or commerce" as "the advertising, the sale or rent or lease,

the offering for sale or rent or lease, or the distribution of any services and any property,

tangible or intangible, real, personal or mixed, and any other article, commodity, or thing

of value in [Connecticut]."  Conn. Gen. Stat. § 42-110a(4).  Thus, "trade or commerce,"

as the terms are defined by statute, include not just the sale of goods and services, but

also "advertising" and "offering for sale" those goods or services.  The Connecticut

Supreme Court noted as much when it held in 2019 that "a party directly injured by

conduct resulting from such advertising can bring an action pursuant to CUTPA even in

the absence of a business relationship with the defendant."  Soto v. Bushmaster

Firearms Int'l, LLC, 331 Conn. 53, 88 (2019) (emphasis added).  Thus, Mr. Conners and

Conners Development, LLC are incorrect in their argument that "trade or commerce"

with the plaintiffs requires a contractual relationship.

In the present case, according to Mrs. Jaigobind's testimony, Mr. Conners was

introduced to the plaintiffs as the builder of the Property, and at that time he offered his

services to the plaintiffs.  Ex. D ("Ms. Jaigobind Dep.") at 59-60.  When Mrs. Jaigobind

asked Mr. Conners to investigate the cause of a leak by going on the roof of the

Property, a reasonable jury could find that she did so because of his past offer of

services.  And although Mr. Conners and Conners Development, LLC were not in privity

with the plaintiffs when Mr. Conners undertook that investigation, a reasonable jury could find that he went up on the roof with the intention of offering his services to the plaintiffs, if he found something he could have fixed for them.[13]  Such a finding would place Mr. Conners' actions within the "advertising" or "offering for sale" of his services, rendering them within the statutory definition of "trade or commerce" under CUTPA.

Thus, the Motion is denied on these grounds.

## V.  CONCLUSION

For the reasons discussed above, Mr. Conners and Conners Development, LLC's Motion for Summary Judgment (Doc. No. 332) is granted in part and denied in part.  The Motion is denied with respect to Count Six.  For Counts Seven, Eight, and Nine, the Motion is granted in part to the extent those Counts seek to hold Mr. Conners and Conners Development, LLC liable for inducing the plaintiffs to purchase the Property, but the Motion is otherwise denied with respect to those Counts.  With respect to Count Ten, the Motion is denied.  Counts Six, Seven, Eight, Nine, and Ten remain pending.

---

[13] Mr. Conners and Conners Development, LLC also cite the deposition testimony of Mrs. Jaigobind to claim that he offered to fix certain issues "at cost," which would amount to an offer of his services.  See Conners Mem. at 27.  However, the portions of her testimony they cited were not included in their filed exhibits, so the court does not consider them here.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 12th day of June 2025.

/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge