**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RAMNARAIN JAIGOBIND, ET AL, | : | CIVIL CASE NO. |
| Plaintiffs, | : | 3:22-CV-1099 (JCH) |
| | : | |
| v. | : | |
| | : | |
| RONALD CARAPEZZI, ET AL, | : | JUNE 12, 2025 |
| Defendants. | : | |

**RULING ON DEFENDANT DAVID PREUSCH ARCHITECT'S MOTION FOR
SUMMARY JUDGMENT (DOC. NO. 333).**

## I. INTRODUCTION

Plaintiffs Ramnarain Jaigobind ("Mr. Jaigobind"), Michelle Jaigobind ("Mrs. Jaigobind"), and Quiet Shores, LLC (together, "the plaintiffs") bring this action against the architectural firm David Preusch Architect ("DPA") and other defendants[1] pursuant to this court's diversity jurisdiction.  See Third Amended Complaint ("Third Am. Compl.") (Doc. No. 229).  The plaintiffs' claims arise from an allegedly defective property sold to them in 2021.  See id.  The plaintiffs allege that DPA was negligent in its design of the property, and that the property's former owners and other defendants fraudulently concealed defects from them when the property was sold in 2021.  See id.

Before the court is DPA's Motion for Summary Judgment.  See Defendant David

---

[1] These other defendants are Ronald Carapezzi and Newell Carapezzi, the sellers of the Property, Conners Development LLC, the development firm that constructed the Property, Matt Conners, the sole member of the Conners Development LLC, Joseph A. Lattarulo, a home inspector retained by the plaintiffs, Mary Green, the Carapezzis' real estate agent, and William Raveis Real Estate, the real estate brokerage firm that employed Ms. Green.  See Third Am. Compl. at ¶¶ 3-12.

The present Motion was flied by DPA only and pertains only to the plaintiffs' claims against it. Thus, in the present Ruling, the court discusses these other defendants only to the extent relevant to the present Motion.  For clarity, the court will refer to the Movant here as "DPA," and avoid referencing "the defendants" unless referring to all of them.

Preusch Architect's Motion for Summary Judgment ("DPA Mot.") (Doc. No. 333).  The plaintiffs oppose the Motion.  See Plaintiffs' Memorandum of Law in Opposition to Defendant David Preusch Architect's Motion for Summary Judgment ("Pl.'s Opp.") (Doc. No. 338).  See also Reply Memorandum of Law by Defendant David Preusch Architect in Response to Opposition to Motion to Dismiss [sic]. ("DPA Reply.") (Doc. No. 347).

For the reasons set forth below, the Motion is denied.

## II.  BACKGROUND[2]

As this is the court's Ruling on a fourth Motion for Summary Judgment, the court offers only an abbreviated version of the background facts.  This case arises out of the sale of property located at 10 Gray Lane in Westport, Connecticut ("the Property") to the plaintiffs in 2021.  See Plaintiff's Local Rule 56(a)2 Statement of Facts ("Pl.'s 56(a)2 Stmt.") (Doc. No. 338-1) ¶ 1; Defendant DPA Local Rule 56(a)1 Statement of Facts ("Defs.' 56(a)1 Stmt.") (Doc. No. 333-2) ¶ 1.  According to the plaintiffs, DPA  is an architectural firm and sole proprietorship owned by David Preusch.  See Third Am. Compl., ¶ 7.[3]  DPA designed and performed architectural services for the Property, before it was constructed and sold to Ronald and Newell Carapezzi (together, "the Carpaezzis") in 2018.  See id. at ¶¶ 17-20.   The Carapezzis, who are also defendants in this litigation, sold the property to the plaintiffs for $10,000,000 in 2021.  See Pl.'s

---

[2] The court draws primarily from the plaintiffs' and DPA's Local Rule 56(a) statements and exhibits in summarizing the material facts.  As it must, the court construes all disputed facts in the light most favorable to the plaintiffs, the non-moving party.  It also notes where the facts are disputed.

[3] This Court generally relies on Local Rule 56 statements of fact, to write a background section out of undisputed facts, or otherwise to indicate where facts are undisputed.  However, the parties' Local Rule 56 statements do not even contain the threadbare information necessary for this abbreviate facts section.  They do not state, for example, the DPA is an architectural firm, or that DPA designed the Property at issue in the litigation. Therefore, the court draws facts from the pleadings which appear to not be in genuine dispute in these regards.

56(a)2 Stmt. ¶ 1; Defs.' 56(a)1 Stmt. ¶ 1.  After the plaintiffs purchased the Property, they allege that they discovered persistent water intrusion issues throughout the Property, which result from negligent design and construction.  See Third. Am. Compl. at ¶¶ 181-189.

The plaintiffs brought claims against various defendants in connection with the Property, including DPA.  See generally, id.  Against DPA, the plaintiffs bring one claim of professional negligence, or malpractice.  See id. at ¶¶ 181-189.  The plaintiffs allege that DPA failed to exercise due care and a reasonable degree of professional competence in the design of the Property, that DPA failed to specify the proper materials for construction, and failed to inspect the Property during and after construction.  See id. at ¶¶ 181-189.

DPA filed a Motion for Summary Judgment.  See DPA Mot.; see also Defendant David Preusch Architect's Memorandum of Law in Support of its Motion for Summary Judgment ("DPA Mem.") (Doc. No. 333-1).  The plaintiffs oppose the Motion, see Pl.'s Opp., and DPA filed a reply.  See Doc. No. 347.

## III. LEGAL STANDARD

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016).  If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue exists where

3

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

## IV. DISCUSSION

DPA makes only one argument in support of its Motion. DPA argues that the plaintiffs have not come forward with sufficient expert testimony to prove their malpractice claim, because neither of the expert architects disclosed by the plaintiffs is currently licensed in Connecticut. See DPA Mem. at 3-8. In their Opposition, the plaintiffs respond that their expert testimony is sufficient because there is no such licensure requirement under Connecticut law and, in addition, because one of their experts was formerly a licensed architect in Connecticut. See generally, Pl.'s Opp. The court agrees with the plaintiffs.

As an initial matter, the court construes DPA's argument as going to the sufficiency of the plaintiffs' expert testimony, not to its admissibility. In a federal action based on diversity jurisdiction, "the admissibility of expert testimony is governed by the Federal Rules of Evidence . . . ," not Connecticut law. Sarkees v. E. I. Dupont De Nemours & Co., 15 F.4th 584, 588 (2d Cir. 2021). DPA has not moved to preclude either of the plaintiffs' experts under Rule 702 of the Federal Rules of Evidence, and

thus the admissibility of the plaintiffs' expert testimony is not at issue.

Instead, DPA argues that the plaintiffs' expert testimony, even if fully admitted, is insufficient as a matter of law to prove the elements of a Connecticut malpractice claim. Specifically, DPA argues that the testimony of an expert not currently licensed in Connecticut cannot establish the relevant standard of care for a professional in Connecticut.  The court disagrees.

In Connecticut, professional negligence, or malpractice, is

> "commonly defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services."

Davis v. Margolis, 215 Conn. 408, 415 (1990) (internal citations and quotations omitted). To prevail in the context of medical malpractice, for example, a plaintiff must prove "(1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury."  Gold v. Greenwich Hosp. Ass'n, 262 Conn. 248, 254–55 (2002).

Proof in a malpractice action typically requires expert testimony.  "As a general rule, for a plaintiff to prevail in a . . . malpractice case in Connecticut, he must present expert testimony to establish the standard of proper professional skill or care."  Vona v. Lerner, 72 Conn. App. 179, 188 (2002).  The basis for this rule is that the typical lay person lacks the specialized knowledge needed to evaluate whether a professional, such as a doctor, lawyer, or architect, acted negligently.  See Fitzmaurice v. Flynn, 167 Conn. 609, 617 (1975).  Connecticut courts have applied this rule to claims alleging malpractice by an engineer or architect.  See Falzarano v. C.E. Floyd Co., Inc., No.

CV176031537, 2019 WL 1938067, at *6 (Conn. Super. Ct. Apr. 4, 2019) (collecting cases).

DPA argues that a Connecticut license is required because the standard of care is specific to the community in which the tort took place.  DPA is correct that traditionally in malpractice cases, courts have often defined the relevant standard of care in a localized way.  Connecticut Model Jury Instructions, for example, still refer to the standard of care of a professional as the "degree of skill and learning commonly applied under all the circumstances in the community by a reasonably prudent member of the profession. . . ." Connecticut Judicial Branch Civil Jury Instructions § 3.8-1.  However, even if the court were to use a localized standard of care,[4] it does not follow that only an architect licensed in Connecticut is qualified to opine on that standard.  The court is not aware of any such strict licensure rule and, as DPA conceded at oral argument, none of the authorities it cites contain such a rule.  For example, DPA cites the Connecticut Appellate Court's decision in Conway v. Am. Excavating, Inc. for the statement that, "[e]xcept in malpractice cases, it is not essential that an expert witness possess any particular credential, such as a license, in order to be qualified to testify, so long as his education or experience indicate that he has knowledge on a relevant subject significantly greater than that of persons lacking such education or experience." Conway v. Am. Excavating, Inc., 41 Conn. App. 437, 448–49 (1996).  This statement, taken on its own, appears to imply that malpractice cases may require expert witnesses

---

[4] The Connecticut Supreme Court has noted, in some contexts, that a strict rule requiring a localized standard of care may no longer be required in medical cases.  See Fitzmaurice, 167 Conn. at 616–17 ("modern medical practices being what they are, it is no longer true that standards of care and diagnosis will differ substantially from town to town. The territorial limitation on the use of expert testimony was a test, founded in fairness and necessity, that the rural doctor should not be held to the standards of the urban doctor, since the latter had greater access to new theories and had more opportunity to refine his methods of practice.")

to possess a specific credential.  However, the Appellate Court reached the opposite conclusion in <u>Conway</u> and held that the trial court erred by excluding expert testimony on the basis of the experts' lack of formal credentials, stating that "the trial court clearly misconceived the law when it sustained the objection to the testimony of the plaintiffs' expert for the reason that he was not a registered land surveyor."  <u>Id.</u> at 450.

Simply put, DPA is unable to cite authority for the rule that a Connecticut architecture malpractice claim requires the testimony of an actively licensed Connecticut architect.  As the plaintiffs point out in their Opposition, there is no rule in Connecticut that an architect, to serve as an expert witness, must be licensed at all.  <u>See</u> <u>Falzarano</u> 2019 WL 1938067 at *6 ("Connecticut courts have not established that an expert witness has to be a licensed architect in order to provide the standard of care applicable to architects").

In the present case, the plaintiffs have disclosed two expert architects: Fred Lott and Giovanni Zapata.  <u>See</u> Pl.'s Opp. at 2.  In their present Motion, DPA does not appear to object to the qualification of either expert witness, except for the fact that neither is licensed in Connecticut.  Because the court has rejected DPA's licensure argument, the Motion is denied.  Although the lack of a Connecticut license – or a lapsed Connecticut license – may go to the weight of an expert's testimony, it is not a sufficient basis for granting DPA summary judgment.

## V.  CONCLUSION

For the reasons discussed above, the Motion for Summary Judgment (Doc. No. 333) is denied.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 12th day of June 2025.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge